## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KAREN JOHNSON,

      Plaintiff,

vs.

JANSSEN PHARMACEUTICALS, INC.,
JANSSEN RESEARCH & DEVELOPMENT
LLC; JOHNSON & JOHNSON CO.;
JANSSEN ORTHO, LLC; MITSUBISHI
TANABE PHARMA HOLDINGS
AMERICA, INC., MITSUBISHI TANABE
PHARMA DEVELOPMENT AMERICA,
INC.; TANABE RESEARCH
LABORATORIES U.S.A., INC.; and
MITSUBISHI TANABE PHARMA CORP.,

      Defendants.

Civil Action No. _____

## NOTICE OF REMOVAL

Defendant Janssen Pharmaceuticals, Inc. ("Janssen") hereby timely removes this product liability action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d)(11), 1446(b)(3), and 1453, from the Court of Common Pleas of Philadelphia County, Pennsylvania.[1] This is one of 106 related actions that Janssen is removing from the Court of Common Pleas of Philadelphia County, Pennsylvania. *See* Chart of Removed Actions, attached as Exhibit A. The Eastern District of Pennsylvania has original subject-matter jurisdiction over these actions because, together, they constitute a "mass action" pursuant to 28 U.S.C. § 1332(d)(11) given that they collectively involve more than 100 plaintiffs whose claims have been proposed to be tried

---

[1] By removing this action to this Court, Janssen does not waive any defenses, objections, or motions available under state or federal law. Further, Janssen expressly reserves the right to move for dismissal of some or all of Plaintiff's claims and/or seek dismissal on grounds of lack of personal jurisdiction, insufficient or improper service of process, improper venue, or forum non conveniens.

jointly on the grounds that the claims involve common questions of law or fact.[2]

In support of removal, Janssen states as follows:

## I.    PROCEDURAL BACKGROUND.

1.    On April 15, 2015, Plaintiff Karen Johnson ("Plaintiff") commenced this product liability action styled *Karen Johnson v. Janssen Pharmaceuticals, Inc., et al.* in the First Judicial District of Pennsylvania in the Court of Common Pleas of Philadelphia County (hereinafter the "State Court Action").  A copy of the Complaint is attached as Exhibit B.

2.    Plaintiff alleges that she was prescribed and ingested the prescription drug Invokamet and that, as a result, she experienced diabetic ketoacidosis.  *See* Compl. ¶¶ 75–76. She asserts the following 12 claims:  strict liability design defect (Count 1); strict liability failure to warn (Count 2); negligence (Count 3); gross negligence (Count 4); breach of express warranty (Count 5); breach of implied warranty (Count 6); fraudulent misrepresentation (Count 7); negligent misrepresentation (Count 8); fraudulent concealment (Count 9); fraud (Count 10); unjust enrichment (Count 11); and violation of consumer protection laws (Count 12).  *See id.* ¶¶ 101–235.  Plaintiff asserts each of these claims against the collective "Defendants" based on their alleged roles in the design, manufacture, labeling, and marketing of Invokamet.  *See, e.g.*, *id.* ¶ 2.

3.    This is one of 106 actions alleging personal injury caused by Invokana or Invokamet that have been filed in the First Judicial District of Pennsylvania in the Court of Common Pleas of Philadelphia County.  *See* Ex. A.  Invokana and Invokamet are prescription medications approved by the Food and Drug Administration as adjuncts to diet and exercise to

---

[2] In the interests of judicial economy, efficiency, and consistency, the Court should refrain from taking any action in this matter, including ruling on any motion to remand, until all 106 removed actions have been transferred to a single judge.

help improve blood sugar control in adults with Type 2 diabetes.  The 106 actions collectively involve 143 plaintiffs, including 106 plaintiffs who allege injury from consuming Invokana or Invokamet and 37 spouse-plaintiffs who assert loss-of-consortium claims.

    4.      On October 11, 2016, six plaintiffs' firms submitted a Petition to Consolidate and for Mass Tort Designation in the First Judicial District of Pennsylvania in the Court of Common Pleas of Philadelphia County (the "Petition").[3]  *See* Pet. at 1, 6.  The Petition is attached hereto as Exhibit C.

    5.      The Petition states that "[t]here are approximately 94 cases pending in this Court as set forth on Exhibit 1" and that "there will at least be a doubling of that number in the near future."  Pet. at 1, 6.[4]  Of the 94 cases identified in Exhibit 1 to the Petition, two cases (*Suddreth* and *Moyers*) had been dismissed and one (*Harold*) appears to be a typographical error because no such case exists.  The remaining 91 cases identified in Exhibit 1 to the Petition involve 122 plaintiffs, including 91 plaintiffs who allege injury from consuming Invokana or Invokamet and 31 spouse-plaintiffs who assert loss-of-consortium claims.[5]

    6.      The Petition seeks consolidation of all Invokana/Invokamet cases, which the Petition refers to alternatively as the "Related Cases" and "Related Actions."  *Id.* at 1, 6.  The Petition states that a mass tort program is necessary because the actions "involve common

---

[3] The Petition was submitted by the following six firms:  (1) Feldman & Pinto; (2) Levin Fishbein, Sedran & Berman; (3) NastLaw, LLC; (4) Lopez McHugh; (5) Weitz & Luxenberg; and (6) Morgan & Morgan. *See* Pet. at 1, 6.

[4] The Petition also notes "there may be other Invokana cases filed that we are not aware of despite our efforts to identify them all." *Id.* at 6.

[5] Twenty-seven (27) of these 91 cases were filed by counsel from the following firms:  Anapol Weiss; Levensten Law Firm; Simmons, Hanly, Conroy; McNichol Bryne & Matlawski; Robins, Kaplan; and Ross, Feller, Casey. *Id.*, Ex.1.  Although counsel from these firms did not sign the Petition, the Petition was served on *all* counsel whose cases are identified in Exhibit 1. *See id.* at 6 & Certificate of Service (copying "[a]ll counsel of record on attached Exhibit '1' via E-mail" and certifying that "all counsel of record" have been served "via . . . email").

questions of fact and law and consolidation for pre-trial ***and trial*** will promote judicial economy and the just and efficient resolution of these actions." *Id.* at 6 (emphasis added). The Petition further urges that consolidation and mass tort designation will "eliminate duplication, avoid inconsistent rulings and conserve the resources of the parties, counsel and the judiciary." *Id.*

7.      In support of the consolidation request, the Petition asserts that "[t]he legal theories and facts asserted in all the Related Actions and those that will be filed in the future are virtually identical and arise from the identical conduct of Defendants." *Id.* at 5. According to the Petition, the Related Actions involve the following four common issues:  (1) whether Invokana generally caused certain injuries; (2) whether Defendants knew or should have known of the risks; (3) if so, whether Defendants failed to disclose the risks to the medical community and/or consumers; and (4) whether Invokana was marketed in a way that misrepresented the benefits and risks of Invokana to the medical community and consumers. *See id.*

## II.      GROUNDS FOR REMOVAL UNDER CAFA.

8.      This Court has jurisdiction pursuant to CAFA, 28 U.S.C. § 1332(d)(11).  CAFA "creates federal jurisdiction over class litigation—including 'mass actions' in which plaintiffs propose a trial involving the claims of 100 or more litigants—if at least one plaintiff demands $75,000, the stakes of the action as a whole exceed $5 million, and minimal diversity of citizenship exists." *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 761 (7th Cir. 2008).  The minimal-diversity requirement is met if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

9.      The "primary objective" of CAFA is "ensuring 'Federal court consideration of interstate cases of national importance.'" *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013) (quoting CAFA, § 2(b)(2), 119 Stat. 5).  CAFA is designed to ensure that

"plaintiffs' lawyers who prefer to litigate in state courts [are no longer able] to easily 'game the system' and avoid removal of large interstate class actions to federal court." S. Rep. No. 109-14, at 10 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 11.

10.     A joint trial for purposes of CAFA's mass action provisions can take different forms, so long as it is proposed that some part of plaintiffs' claims be "determined jointly." *In re Abbott Labs.*, 698 F.3d 568, 573 (7th Cir. 2012). Plaintiffs propose a joint trial whenever they request that claims can be determined jointly "in any respect." 151 Cong. Rec. H723, H729 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner). Further, "[i]t does not matter whether a trial covering 100 or more plaintiffs actually ensues; the statutory question is whether one has been proposed." *Bullard*, 535 F.3d at 762; *see also Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 868 (9th Cir. 2013) ("Whether Plaintiffs' claims ultimately proceed to a joint trial is irrelevant.").

11.     As set forth below, this action and the other 105 actions identified in Exhibit A to this Notice of Removal together satisfy all of the jurisdictional requirements for a mass action under CAFA. In addition, Janssen has satisfied all of the procedural requirements for removal of a mass action pursuant to 28 U.S.C. §§ 1446 and 1453. Accordingly, mass action removal is proper here.

### A.     The Petition Proposes A Joint Trial Of More Than 100 Plaintiffs' Claims.

12.     This action is removable as a mass action because the Petition proposes to try Plaintiff's claims jointly with the claims of more than 100 other plaintiffs who have filed Invokana or Invokamet products liability actions in the Court of Common Pleas of Philadelphia County. *See* Pet. at 6. Currently, there are 106 pending cases involving the claims of 143 plaintiffs. *See* Ex. A.

13.     The Petition argues that the "legal theories and facts asserted in all the Related Actions and those that will be filed in the future are virtually identical." Pet. at 5.  In light of the "common questions of fact and law," plaintiffs request consolidation "for pre-trial *and trial* [to] promote judicial economy and the just and efficient resolution of these actions." *Id*. at 6 (emphasis added).

14.     Every federal appellate decision addressing a scenario where multiple plaintiffs propose to coordinate cases in similar circumstances has found that this type of request for coordination is a proposal for a joint trial within the meaning of CAFA.  In *In re Abbott Laboratories*, the Seventh Circuit held that plaintiffs' proposal for a single judge to preside over several hundred plaintiffs' claims established jurisdiction under CAFA despite plaintiffs' insistence that they never addressed *how* the trials of the various claims in the cases would be conducted. *See* 698 F.3d at 572.  In *Atwell v. Boston Scientific Corp.*, 740 F.3d 1160 (8th Cir. 2013), the Eighth Circuit held that plaintiffs' motion for special assignment of three cases with 136 plaintiffs to a single judge created federal jurisdiction under CAFA even though the plaintiffs did not explicitly seek consolidation. *See id.* at 1165–66.  And in *Corber v. Xanodyne Pharmaceuticals, Inc.*, 771 F.3d 1218 (9th Cir. 2014), the Ninth Circuit rejected the argument that a petition must expressly request a joint trial to trigger CAFA jurisdiction and found that plaintiffs' motion for coordination "for all purposes" constituted a proposal that their claims be tried jointly for purposes of CAFA. *Id.* at 1225.[6]

15.     Here, the Petition is even more explicit in its proposal for a joint trial than the proposals in *Abbott*, *Atwell*, and *Corber*.  Indeed, the Petition here expressly seeks "consolidation

---

[6] In contrast, where plaintiffs filed separate cases and neither plaintiffs nor the court took affirmative steps to consolidate or coordinate the cases, the Tenth Circuit held that removal as a mass action under CAFA was premature. *See Parson v. Johnson & Johnson*, 749 F.3d 879, 889 (10th Cir. 2014).

for pre-trial **and trial**." Pet. at 6 (emphasis added).  The Petition could have limited the request for coordination to pretrial proceedings only—a proposal that Congress specifically exempted from the definition of a mass action.  *See* 28 U.S.C. § 1332(d)(11)(B)(ii)(IV).  But the Petition did not do that.  *See Corber*, 771 F.3d at 1223 ("[W]hile plaintiffs "are the masters of their complaints, they are also the masters of their petitions for coordination.  Stated another way, when we assess whether there has been a proposal for a joint trial, we hold plaintiffs responsible for what they have said and done.").  Instead, it expressly proposed that the claims of more than 100 plaintiffs be tried jointly, thus satisfying 28 U.S.C. § 1332(d)(11).

> **B.**     **The Amount-in-Controversy Requirement Is Satisfied.**

16.     To trigger CAFA jurisdiction, at least one plaintiff must seek recovery exceeding $75,000, exclusive of interests and costs, and the aggregate recovery sought by all plaintiffs must exceed $5,000,000, exclusive of interests and costs.  *See Bullard*, 535 F.3d at 761; 28 U.S.C. §§ 1332(a), (d)(2), (d)(11).  Both requirements are met here.

17.     Under section 1446(a), a defendant seeking to remove an action must include in its notice of removal "a short and plain statement of the grounds for removal."  The Supreme Court has explained that "by borrowing the familiar 'short and plain statement' standard" from Rule 8(a) of the Federal Rules of Civil Procedure, Congress "intended to 'simplify the pleading requirements for removal' and to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'"  *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014) (quoting H.R. Rep. No. 100-889, p. 71 (1988)) (internal quotation marks omitted).  To satisfy the "short and plain statement" requirement, the removal notice must allege the amount in controversy "plausibly" but "need not contain evidentiary submissions" to support the allegation.  *Id.* at 551 (quoting *Ellenburg v.*

*Spartan Motors Chassis Inc.*, 519 F.3d 192, 200 (4th Cir. 2008), for the proposition that "a removing party's notice of removal need not 'meet a higher pleading standard than the one imposed on a plaintiff in drafting an initial complaint.'").[7]

18.     The plaintiffs in many cases identified in Exhibit 1 to the Petition expressly allege that the amount in controversy with respect to their individual claims exceeds $75,000, exclusive of interest and costs.

19.     Even without these express concessions, however, it is apparent that the $75,000 amount-in-controversy requirement is met in each of the 106 actions identified in Exhibit A to this Notice of Removal, including Plaintiff's action.

20.     The amount in controversy generally is determined by the complaint itself. *See Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961); *Angus v. Shiley, Inc.*, 989 F.2d 142, 145 (3d Cir. 1993); *Hocker v. Kurfeld*, No. 15-04262, 2015 WL 8007463, at *2 (E.D. Pa. Dec. 7, 2015). "When a complaint does not limit its request to a precise monetary amount, the court must independently appraise the claim's value to determine if it satisfies the amount in controversy requirement." *Hocker*, 2015 WL 8007463 at *2 (citing *Angus*, 989 F.2d at 146).

21.     Here, Plaintiff alleges that she experienced diabetic ketoacidosis. *See* Compl. ¶¶ 75–76. She also alleges that she has "endured pain and suffering, emotional distress, loss of

---

[7] If a court questions a defendant's amount-in-controversy allegation, the court *must* give the parties an opportunity to present evidence relating to the allegation and only then decide whether the preponderance of that evidence shows that the amount in controversy is met. *See Dart*, 135 S. Ct. at 554 ("Evidence establishing the amount *is required* . . . when . . . the court questions[] the defendant's allegation." (emphasis added)). In other words, a court may not sua sponte remand a removed case based on a deficient amount-in-controversy allegation before giving the defendant an opportunity to cure the alleged deficiency. *See, e.g., Ellenburg*, 519 F.3d at 194, 197–98; *Corporate Mgmt. Advisors, Inc. v. Artjen Complexus, Inc.*, 561 F.3d 1294, 1295–96, 1298 (11th Cir. 2009); *accord Harmon v. OKI Systems*, 115 F.3d 477, 479 (7th Cir. 1997) (failure to allege amount in controversy constitutes a "procedural defect" that does not undermine jurisdiction).

enjoyment of life, and economic loss, including significant expenses for medical care and treatment which will continue in the future." *Id.* ¶ 78.

22.     Based on these allegations, it is plain that the amount in controversy with respect to Plaintiffs' individual claims exceeds the $75,000 jurisdictional threshold. *See, e.g.*, *Hocker*, 2015 WL 8007463, at *2 (finding amount in controversy exceeded $75,000 where complaint alleged serious medical injuries and medical costs); *McPhail v. Deere Co.*, 529 F.3d 947, 955 (10th Cir. 2008) (concluding that amount in controversy was established by plaintiff's "alleged damages for property, travel expenses, and emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation and her temporary inability to do housework" (citing *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999))); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (finding that complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000").

23.     In addition, Plaintiff seeks punitive damages. *See, e.g.*, Am. Compl. ¶¶ 236–40. It is well-established that punitive damages are part of the amount in controversy in a civil action. *See Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993) ("When both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied.").

24.     Because Plaintiff's allegations are substantially similar to those in each of the other 105 cases identified in Exhibit A, the amount in controversy for each of those cases also exceeds $75,000, exclusive of interests and costs. In that regard, the Petition alleges that "[a]ll of the actions" proposed for consolidation "allege substantially similar, and in some cases identical, causes of action and are based on the same or substantially similar underlying facts, namely that use of Invokana[] has caused the Plaintiffs to suffer serious and grave injuries" that can be

"fatal," including diabetic ketoacidosis, kidney failure, and serious cardiovascular problems. Pet. at 5–6. Based on these injuries, all plaintiffs seek monetary damages. *See id.* at 5. In addition, all plaintiffs seek punitive damages like Plaintiff here. Accordingly, the amount-in-controversy requirement in section 1332(a) is satisfied as to each plaintiff whose case is identified in Exhibit A to this Notice of Removal.

25.     Because each plaintiff seeks recovery in excess of $75,000, the aggregate recovery sought by the 143 plaintiffs (*i.e.*, more than $10,000,000) meets the CAFA requirement that the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

26.     Accordingly, the amount-in-controversy requirement is satisfied.

**C.     The Minimal Diversity Requirement Is Satisfied.**

27.     The diversity requirement for mass action removal has been satisfied. CAFA provides for jurisdiction over class actions, including mass actions, in which "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). In other words, CAFA requires minimal diversity of citizenship rather than complete diversity.

28.     Plaintiff alleges that Janssen Pharmaceuticals, Inc. is a Pennsylvania corporation with its principal place of business in Pennsylvania. *See* Compl. ¶ 6. For purposes of 28 U.S.C. § 1332(c)(1), Janssen is therefore deemed a citizen of Pennsylvania.

29.     As noted in the Chart of Removed Actions, most plaintiffs are citizens of states other than Pennsylvania. *See* Ex. A.

30.     Accordingly, the minimal diversity requirement is satisfied here.

**D.     The Removal Is Timely.**

31.     The Petition was filed on October 11, 2016.  The deadline for any plaintiff to oppose the Petition was October 31, 2016.  No plaintiff opposed the request to jointly try all plaintiffs' claims.  Thus, it was confirmed as of October 31, 2016 that the Petition involved the claims of over 100 plaintiffs who voluntarily proposed to try their claims jointly.

32.     Removal is therefore timely pursuant to 28 U.S.C. §§ 1453 and 1446(b)(3).

**III.   JANSSEN HAS SATISFIED THE PROCEDURAL AND VENUE REQUIREMENTS FOR REMOVAL.**

33.     Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, orders, and other documents served and/or on file in the state court as of the date of this filing are filed herewith.

34.     Under 28 U.S.C. § 1441(a), venue for this action is proper in this Court, which is the district and division embracing the place where the State Court Action is pending.

35.     No previous application has been made for the relief requested herein.

36.     Although the consent of all defendants is not required (*see* 28 U.S.C. § 1453(b)), all properly joined and served defendants consent to this removal. *See Brown v. Jevic*, 575 F.3d 322, 327 (3d Cir. 2009) ("Congress provided that a single defendant may remove an action [under CAFA] without the consent of other defendants.").

37.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiff's counsel of record and will be promptly filed with the Prothonotary of the Court of Common Pleas of Philadelphia County.

38.     All procedural requirements for removal under 28 U.S.C. §§ 1441 and 1446 have been satisfied and this case is hereby removed pursuant to the Court's original jurisdiction under 28 U.S.C. § 1332.

39.    Accordingly, Janssen removes this action and gives notice to Plaintiff and to the Court of Common Pleas of Philadelphia County that the State Court Action shall proceed no further pursuant to 28 U.S.C. § 1446(d).

40.    Janssen demands a trial by jury.


Dated: November 9, 2016                         GREENBERG TRAURIG, LLP

                                                /s/ Gregory T. Sturges
                                                Brian T. Feeney
                                                Gregory T. Sturges
                                                2700 Two Commerce Square
                                                2001 Market Street
                                                Philadelphia, PA 19103
                                                Tel 215.988.7812
                                                Fax 215.717.5265
                                                feeneyb@gtlaw.com
                                                sturgesg@gtlaw.com

                                                ***Attorneys for Defendant Janssen
                                                Pharmaceuticals, Inc.***

## CERTIFICATE OF SERVICE

I, Gregory T. Sturges, hereby certify that on the 9th day of November 2016, I caused a true and correct copy of the foregoing Notice of Removal to be served via e-mail upon the following counsel of record:

> Joshua M. Mankoff
> Lopez McHugh, LLP
> 214 Flynn Avenue
> Moorestown, NJ 08057
> jmankoff@lopezmchugh.com
>
> Frank M. Petosa
> Morgan & Morgan Complex Litigation Group
> 600 N. Pine Island Road
> Suite 400
> Plantation, FL 33324
> fpetosa@forthepeople.com

> /s/ Gregory T. Sturges
> Gregory T. Sturges

1201208.1

# EXHIBIT A

# EXHIBIT A – CHART OF REMOVED ACTIONS

| Case Name | Case Number | Number of Plaintiffs | State of Residence |
|---|---|---|---|
| Arthur Portnoff v. Janssen Pharmaceuticals, Inc., et al. | No. 000653 (Dec. Term, 2015) | 1 | TX |
| Anicia Steiner v. Janssen Research & Development, LLC, et al. | No. 000958 (Dec. Term, 2015) | 1 | PA |
| Melissa and Adam Wear v. Janssen Pharmaceuticals, Inc., et al. | No. 002121 (Dec. Term, 2015) | 2 | OR |
| Valerie Perlis v. Janssen Pharmaceuticals, Inc., et al. | No. 02174 (Dec. Term, 2015) | 1 | NJ |
| Deirdre Cherry Administrator of the Estate of David Cherry v. Janssen Research & Development, LLC, et al. | No. 002946 (Dec. Term, 2015) | 1 | CA |
| Joyce Jeffries v. Janssen Pharmaceuticals, Inc., et al. | No. 000006 (Feb. Term, 2016) | 1 | TN |
| Jerry McWhorter v. Janssen Pharmaceuticals, Inc., et al. | No. 003689 (Feb. Term, 2016) | 1 | TX |
| Ralph P. and Krystal Ritenour v. Janssen Research & Development, LLC, et al | No. 003760 (Feb. Term, 2016) | 2 | PA |
| Matthew Landes v. Janssen Research & Development, LLC, et al. | No. 000269 (Mar. Term, 2016) | 1 | TX |
| Lillie and Richard Huddleston v. Janssen Pharmaceuticals, Inc., et al. | No. 001050 (Mar. Term, 2016) | 2 | KY |
| Joan and Douglas Barrick v. Janssen Pharmaceuticals, Inc., et al. | No. 001614 (Mar. Term, 2016) | 2 | SC |
| William and Brenda Furlow v. Janssen Pharmaceuticals, Inc., et al. | No. 001615 (Mar. Term, 2016) | 2 | AL |
| Jamel Harper v. Janssen Pharmaceuticals, Inc., et al. | No. 001617 (Mar. Term, 2016) | 1 | VA |
| Leigh Ray v. Janssen Pharmaceuticals, Inc., et al. | No. 001649 (Mar. Term, 2016) | 1 | CA |
| Mary Fortado v. Janssen Pharmaceuticals, Inc., et al. | No. 001651 (Mar. Term, 2016) | 1 | LA |
| Karen Johnson v. Janssen Pharmaceuticals, Inc., et al. | No. 001686 (Mar. Term, 2016) | 1 | TN |
| Kristi Colbaugh v. Janssen Pharmaceuticals, Inc., et al. | No. 002173 (Apr. Term, 2016) | 1 | TN |
| Cody Jordan v. Janssen Pharmaceuticals, Inc., et al. | No. 002174 (Apr. Term, 2016) | 1 | TX |
| Willetta Davis v. Janssen Pharmaceuticals, Inc., et al. | No. 002175 (Apr. Term, 2016) | 1 | GA |
| Robert Goins v. Janssen Pharmaceuticals, Inc., et al. | No. 002935 (Apr. Term, 2016) | 1 | TN |
| Franklin Walker v. Janssen Pharmaceuticals, Inc., et al. | No. 003253 (Apr. Term, 2016) | 1 | TN |
| Francis and Maria Stone v. Janssen Pharmaceuticals, Inc., et al. | No. 003438 (Apr. Term, 2016) | 2 | SC |
| Michael Mobley v. Janssen Pharmaceuticals, Inc. et al. | No. 003460 (Apr. Term, 2016) | 1 | TN |
| Kevin and Jessica Hicks v. Janssen Pharmaceuticals, Inc., et al. | No. 001079 (May Term, 2016) | 2 | NC |
| Chestopher Harrold v. Janssen Pharmaceuticals, Inc., et al. | No. 001225 (May Term, 2016) | 1 | CA |
| Sarah Gay v. Janssen Pharmaceuticals, Inc., et al. | No. 001226 (May Term, 2016) | 1 | FL |
| James and Joanna Maggerd v. Janssen Pharmaceuticals, Inc., et al. | No. 001227 (May Term, 2016) | 2 | KY |
| Carlin Martin v. Janssen Pharmaceuticals, Inc., et al. | No. 001230 (May Term, 2016) | 1 | OH |

| Case Name | Case Number | Number of Plaintiffs | State of Residence |
|---|---|---|---|
| David and Toni Hayhurst v. Janssen Pharmaceuticals, Inc., et al. | No. 001231 (May Term, 2016) | 2 | WV |
| Ludie Sanders v. Janssen Pharmaceuticals, Inc., et al. | No. 001232 (May Term, 2016) | 1 | MD |
| Craigory Allen v. Janssen Pharmaceuticals, Inc., et al. | No. 001233 (May Term, 2016) | 1 | MS |
| Susan McCumbers v. Janssen Pharmaceuticals, Inc., et al. | No. 001242 (May Term, 2016) | 1 | GA |
| David and Laura Mayfield v. Janssen Pharmaceuticals, Inc., et al. | No. 001282 (May Term, 2016) | 2 | AL |
| Ann Bassett v. Janssen Research & Development, LLC, et al. | No. 001487 (May Term, 2016) | 1 | CA |
| Lena Marlow v. Janssen Research & Development, LLC, et al. | No. 001544 (May Term, 2016) | 1 | TN |
| Nancy Teague v. Janssen Research & Development, LLC, et al. | No. 001646 (May Term, 2016) | 1 | TN |
| Laurie Guthrie v. Janssen Pharmaceuticals, Inc. | No. 002837 (May Term, 2016) | 1 | PA |
| Sally Seay v. Janssen Pharmaceuticals, Inc., et al. | No. 002080 (May Term, 2016) | 1 | TN |
| Jeff and Bess Drzycimski v. Janssen Pharmaceuticals, Inc., et al. | No. 003080 (May Term, 2016) | 2 | TN |
| Darren and Mary Mandel v. Janssen Pharmaceuticals, Inc., et al. | No. 003082 (May Term, 2016) | 2 | FL |
| Donald Mayne v. Janssen Pharmaceuticals, Inc., et al. | No. 003083 (May Term, 2016) | 1 | AL |
| Brandon Arnburn v. Janssen Pharmaceuticals, Inc., et al. | No. 003084 (May Term, 2016) | 1 | TN |
| Richard and Jeannine Demers v. Janssen Pharmaceuticals, Inc., et al. | No. 003086 (May Term, 2016) | 2 | FL |
| Mary Hess v. Janssen Research & Development, LLC et al. | No. 003153 (May Term, 2016) | 1 | OK |
| Tina Rios v. Janssen Pharmaceuticals, Inc., et al. | No. 003334 (May Term, 2016) | 1 | CA |
| Robert Clarkson v. Janssen Pharmaceuticals, Inc., et al. | No. 003703 (May Term, 2016) | 1 | DE |
| Connie McKinney v. Janssen Pharmaceuticals, Inc., et al. | No. 003704 (May Term, 2016) | 1 | TN |
| Virginia Russell v. Janssen Pharmaceuticals, Inc., et al. | No. 003520 (May Term, 2016) | 1 | LA |
| Stacey and Julie Williams v. Janssen Pharmaceuticals, Inc., et al. | No. 003513 (May Term, 2016) | 2 | AL |
| Donna and Donald Maness v. Janssen Pharmaceuticals, Inc., et al. | No. 000829 (June Term, 2016) | 2 | KY |
| Tomekie Powe v. Janssen Pharmaceuticals, Inc., et al. | No. 001148 (June Term, 2016) | 1 | AL |
| Hayley Miles v. Janssen Pharmaceuticals, Inc., et al. | No. 001731 (June Term, 2016) | 1 | TN |
| Kurt Petersen v. Janssen Pharmaceuticals, Inc., et al. | No. 002700 (June Term, 2016) | 1 | VA |
| Star Sherum v. Janssen Pharmaceuticals, Inc., et al. | No. 002881 (June Term, 2016) | 1 | AL |
| Bobbie Deaton and Garfield Deaton, Jr. v. Janssen Pharmaceuticals, Inc., et al. | No. 003581 (June Term, 2016) | 2 | KY |
| Kenneth and Andrea Scheilka v. Janssen Pharmaceuticals, Inc., et al. | No. 003583 (June Term, 2016) | 2 | FL |
| Raul Rodriguez v. Janssen Pharmaceuticals, Inc. | No. 003821 (June Term, 2016) | 1 | TX |

| Case Name | Case Number | Number of Plaintiffs | State of Residence |
|---|---|---|---|
| Tom Allen v. Janssen Pharmaceuticals, Inc., et al. | No. 000676 (July Term, 2016) | 1 | KY |
| Samuel Carr v. Janssen Pharmaceuticals, Inc. | No. 001064 (July Term, 2016) | 1 | KY |
| Carol Huckabee v. Janssen Pharmaceuticals, Inc. | No. 001065 (July Term, 2016) | 1 | LA |
| Norma Thornton v. Janssen Pharmaceuticals, Inc. | No. 001066 (July Term, 2016) | 1 | AL |
| Clinton and Rochelle Terry v. Janssen Pharmaceuticals, Inc., et al. | No. 000024 (July Term, 2016) | 2 | WA |
| Donnie Perry v Janssen Pharmaceuticals, Inc. | No. 003042 (July Term, 2016) | 1 | VA |
| Isaac Simpson, Jr. v. Janssen Pharmaceuticals, Inc. | No. 003044 (July Term, 2016) | 1 | TN |
| Richard Clark v. Janssen Pharmaceuticals, Inc. | No. 000097 (Aug. Term, 2016) | 1 | TN |
| Suzanne Taplin v. Janssen Pharmaceuticals, Inc., et al. | No. 000095 (Aug. Term, 2016) | 1 | NC |
| Darnella and Ronald Bruner v. Janssen Pharmaceuticals, Inc., et al. | No. 000737 (Aug. Term, 2016) | 2 | KY |
| Miranda Frazier v. Janssen Pharmaceuticals, Inc., et al. | No. 001637 (Aug. Term, 2016) | 1 | TN |
| Jacqueline and Patrick Mahoney v. Janssen Pharmaceuticals, Inc., et al. | No. 002629 (Aug. Term, 2016) | 2 | CO |
| Carlotta and Paul Lambert v. Janssen Pharmaceuticals, Inc., et al. | No. 002613 (Aug. Term, 2016) | 2 | OK |
| Michael and Kristi Jett v. Janssen Pharmaceuticals, Inc., et al. | No. 002615 (Aug. Term, 2016) | 2 | AK |
| Kenneth and Vivian Board v. Janssen Pharmaceuticals, Inc., et al. | No. 002617 (Aug. Term, 2016) | 2 | WA |
| Helen Carrington v. Janssen Pharmaceuticals, Inc., et al. | No. 002618 (Aug. Term, 2016) | 1 | TX |
| Cynthia James v. Janssen Pharmaceuticals, Inc., et al. | No. 002620 (Aug. Term, 2016) | 1 | TX |
| David and Stacey Oberschmidt v. Janssen Pharmaceuticals, Inc., et al. | No. 002622 (Aug. Term, 2016) | 2 | MS |
| Melinda and Richard Campbell v. Janssen Pharmaceuticals, Inc., et al. | No. 002623 (Aug. Term, 2016) | 2 | FL |
| William and Fran Cooper v. Janssen Pharmaceuticals, Inc., et al. | No. 002614 (Aug. Term, 2016) | 2 | MS |
| Vera and Ralph Marciano v. Janssen Pharmaceuticals, Inc., et al. | No. 002621 (Aug. Term, 2016) | 2 | FL |
| Robert Covington v. Janssen Pharmaceuticals, Inc., et al. | No. 002619 (Aug. Term, 2016) | 1 | LA |
| Alan Bennett Dincans v. Janssen Pharmaceuticals, Inc. | No. 002895 (Aug. Term, 2016) | 1 | TX |
| Roy Locke v. Janssen Pharmaceuticals, Inc. | No. 002582 (Aug. Term, 2016) | 1 | KY |
| Judith Suiter v. Janssen Pharmaceuticals, Inc. | No. 002784 (Aug. Term, 2016) | 1 | GA |
| Fermin Medina-Jimenez and Adelaida Medina v. Janssen Pharmaceuticals, Inc., et al. | No. 004125 (Aug. Term, 2016) | 2 | FL |
| Terry and Elisabeth Choate v. Janssen Pharmaceuticals, Inc., et al. | No. 004135 (Aug. Term, 2016) | 2 | WV |
| Annette Jones v. Janssen Pharmaceuticals, Inc., et al. | No. 004136 (Aug. Term, 2016) | 1 | GA |
| Theodore and Violet Wright v. Janssen Pharmaceuticals, Inc., et al. | No. 004137 (Aug. Term, 2016) | 2 | SC |

| Case Name | Case Number | Number of Plaintiffs | State of Residence |
|---|---|---|---|
| Miriam Aune v. Janssen Pharmaceuticals, Inc. | No. 001591 (Sept. Term, 2016) | 1 | TX |
| Keri Downs v. Janssen Pharmaceuticals, Inc. | No. 001592 (Sept. Term, 2016) | 1 | CA |
| Sherry and John Handjis v. Janssen Pharmaceuticals Inc., et al. | No. 002898 (Sept. Term, 2016) | 2 | LA |
| Phil Bradshaw and Robin Jones v. Janssen Pharmaceuticals Inc., et al. | No. 002902 (Sept. Term, 2016) | 2 | TN |
| Judith Palacio v. Janssen Pharmaceuticals Inc., et al. | No. 002969 (Sept. Term, 2016) | 1 | CO |
| Napoleon Jones v. Janssen Pharmaceuticals Inc., et al. | No. 002910 (Sept. Term, 2016) | 1 | GA |
| Chris Lewis, v. Janssen Pharmaceuticals Inc., et al. | No. 002906 (Sept. Term, 2016) | 1 | NY |
| Kulsoom Nota v. Janssen Pharmaceuticals Inc., et al. | No. 002911 (Sept. Term, 2016) | 1 | TX |
| Michael Oster v. Janssen Pharmaceuticals Inc., et al. | No. 002975 (Sept. Term, 2016) | 1 | NC |
| Michelle Cresitello v. Janssen Pharmaceuticals Inc., et al. | No. 002907 (Sept. Term, 2016) | 1 | OK |
| Judith Wagstaff v. Janssen Pharmaceuticals Inc., et al. | No. 002909 (Sept. Term, 2016) | 1 | NY |
| Nicole Pucello and Andrea Sava v. Janssen Pharmaceuticals Inc., et al. | No. 003677 (Sept. Term, 2016) | 2 | NY |
| Karen Thompson v. Janssen Pharmaceuticals Inc., et al. | No. 000937 (Sept. Term, 2016) | 1 | KY |
| John Baumann v. Janssen Pharmaceuticals Inc., et al. | No. 003679 (Sept. Term, 2016) | 1 | FL |
| Michael and Karen Thrasher v. Janssen Pharmaceuticals, Inc., et al. | No. 001024 (Oct. Term, 2016) | 2 | AL |
| Barbara Porter v. Janssen Pharmaceuticals, Inc. | No. 000015 (Oct. Term, 2016) | 1 | VA |
| Natalie and Michael Cooper v. Janssen Pharmaceuticals, Inc., et al. | No. 003142 (Oct. Term, 2016) | 2 | FL |
| Rebecca and Joseph McChurch v. Janssen Pharmaceuticals, Inc., et al. | No. 3140 (Oct. Term, 2016) | 2 | IA |
| Connie Stephens v. Janssen Pharmaceuticals, Inc., et al. | No. 3139 (Oct. Term, 2016) | 1 | FL |
| Clifford and Kathleen Thatcher v. Janssen Pharmaceuticals, Inc., et al. | No. 3122 (Oct. Term, 2016) | 2 | FL |
| Total Number of Plaintiffs: | | 143 | |

# EXHIBIT B

LOPEZ MCHUGH, LLP
BY:    James J. McHugh, Jr.  ID. 65809
         Joshua M. Mankoff    ID. 210242
1123 Admiral Peary Way, Quarters K
Philadelphia, PA 19112
Telephone: (215) 952-6910
Facsimile: (215) 952-6914
*Attorneys for Plaintiff*



Morgan & Morgan Complex Litigation Group
Frank M. Petosa, FL Bar No. 972754
600 N. Pine Island Road
Suite 400
Plantation, FL 33324
Telephone: (954) 318-0268
Facsimile: (954) 327-3018
*Attorneys for Plaintiff*

## IN THE COURT OF COMMON PLEAS
### PHILADELPHIA COUNTY, CIVIL TRIAL DIVISION

| | |
|---|---|
| Karen Johnson,<br>205 Roddy Branch Rd., Rockford, TN 37853<br><br>**Plaintiff,**<br><br>v.<br><br>JANSSEN PHARMACEUTICALS, INC.,<br>a Pennsylvania corporation, 800 Ridgeview<br>Drive, Horsham, PA 19044;<br><br>and<br><br>JANSSEN RESEARCH AND<br>DEVELOPMENT, LLC,<br>a New Jersey company, 920 Route 202,<br>Raritan, NJ 08869;<br><br>and<br><br>JOHNSON & JOHNSON CO.,<br>a New Jersey corporation, One Johnson &<br>Johnson Plaza, New Brunswick, NJ 08933; | APRIL TERM, 2016<br><br>NO. _____<br><br>**COMPLAINT AND DEMAND FOR<br>JURY TRIAL** |

1

Case ID: 160401686

and

JANSSEN ORTHO, LLC,
a Delaware company, c/o The Corporation
Trust company, Corporation Trust Center,
1209 Orange St., Wilmington, DE 19801;

and

MITSUBISHI TANABE PHARMA
HOLDINGS AMERICA, INC.,
a Delaware corporation, 525 Washington
Boulevard, Suite 400, Jersey City, NJ 07310;

and

MITSUBISHI TANABE PHARMA
DEVELOPMENT AMERICA, INC.,
a Delaware corporation, 525 Washington
Boulevard, Suite 400, Jersey City, New Jersey
07310;

and

TANABE RESEARCH LABORATORIES
U.S.A., INC.,
a California corporation, 4540 Towne Centre
Court, San Diego, California 92121;

and

MITSUBISHI TANABE PHARMA CORP.,
a Japanese corporation, 3-2-10, Dosho-machi,
Chuo-ku, Osaka 541-8505, Japan;

**Defendants.**

2

## NOTICE TO PLEAD

**NOTICE** You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. **PHILADELPHIA COUNTY BAR ASSOCIATION** LAWYER REFERRAL AND INFORMATION SERVICE 1101 MARKET STREET, 11th FLOOR PHILADELPHIA, PENNSYLVANIA 19107 TELEPHONE: (215) 238-1701

**AVISO** Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de lan demanda y la notificacion. Hace falta asentar una comparesencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiendandes u otros derechos importantes para uted. LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIOI, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL. **ASOCIACION DE LICENCIADOR DE PHILADELPHIA** VICIO DE REFERENCIA DE INFORMACION LEGAL 1101 MARKET STREET, 11th FLOOR PHILADELPHIA, PENNSYLVANIA 19107 TELEFONO: (215) 238-1701

3

Case ID: 160401686

## CIVIL ACTION COMPLAINT

1. Plaintiff Karen Johnson (hereinafter Plaintiff), complaining against Defendants, Janssen Research & Development, LLC; Janssen Pharmaceuticals, Johnson & Johnson, Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories U.S.A., Inc., and Mitsubishi Tanabe Pharma Corp. state as follows:

### A. BACKGROUND

2. This is an action for damages suffered by Plaintiff as a direct and proximate result of Defendants' negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of Invokamet (a combination of canagliflozin and metformin hydrochloride.)

### B. PARTIES

3. At the time of Plaintiff Karen Johnson's use of Invokamet and injuries, Plaintiff was a resident and citizen of Rockford, Blount County, Tennessee. Plaintiff is presently a citizen of and resides in Rockford, Blount County, Tennessee.

4. Defendant Janssen Research & Development LLC (Janssen R&D) is a limited liability company organized under the laws of New Jersey, with a principal place of business at 920 Route 202, Raritan, NJ 08869. Janssen R&D's sole member is Janssen Pharmaceuticals, Inc.

5. Janssen R&D is registered to do business throughout the United States, including in Pennsylvania and states where Plaintiff have resided and were treated.

4

Case ID: 160401686

6. Defendant Janssen Pharmaceuticals, Inc. (Janssen) is a Pennsylvania corporation with a principal place of business at 800 Ridgeview Drive, Horsham, PA 19044. Both Janssen, and its wholly owned LLC, Janssen R&D, are subsidiaries of Johnson & Johnson.

7. Janssen is registered to do business throughout the United States, including in Pennsylvania and states where Plaintiff have resided and were treated.

8. Defendant Johnson & Johnson, Inc. (J&J) is a New Jersey corporation with a principal place of business at One Johnson & Johnson Plaza, New Brunswick, NJ 08933.

9. J&J is registered to do business throughout the United States, including in Pennsylvania and states where Plaintiff have resided and were treated.

10. Defendant Janssen Ortho, LLC, (Janssen Ortho) is a Delaware company with a principal place of business at State Road 933 Km 01, Gurabo, Puerto Rico 00778.

11. Janssen Ortho is registered to do business throughout the United States, including Pennsylvania and states where Plaintiff have resided and were treated.

12. At all relevant times, Janssen Ortho manufactured Invokana and Invokamet.

13. Defendant Mitsubishi Tanabe Pharma Corp. (Tanabe) is a Japanese corporation with its principal place of business at 3-2-10, Dosho-machi, Chuo-ku, Osaka 541-8505, Japan. Tanabe is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Invokana and Invokamet.

14. Defendant Mitsubishi Tanabe Pharma Holdings America, Inc. (Tanabe Holdings) is a Delaware corporation, with a principal place of business at 525 Washington Boulevard, Suite 400, Jersey City, NJ 07310.

5

15. Tanabe Holdings is a subsidiary of Tanabe and a holding company for U.S. subsidiaries.

16. Defendant Mitsubishi Tanabe Pharma Development America, Inc. (Tanabe Development) is a Delaware corporation, with a principal place of business at 525 Washington Boulevard, Suite 400, Jersey City, New Jersey 07310.

17. Tanabe Development licenses pharmaceuticals and drug therapies including Invokana and Invokoamet for its parent corporation, Tanabe and conducts clinical development activity for obtaining marketing approval of drugs in the U.S., including Invokana and Invokamet, and provides administration support for the U.S. affiliates.

18. Defendant Tanabe Research Laboratories U.S.A., Inc. (Tanabe Research) is a California corporation, with a principal place of business 4540 Towne Centre Court, San Diego, California 92121

19. Tanabe Research conducts pharmaceutical research, including with respect to Invokana and Invokamet.

20. At all times herein mentioned, Defendants advertised, promoted, supplied, and sold to distributors and retailers for resale to physicians, hospitals, medical practitioners, and the general public certain pharmaceutical products, Invokana and Invokamet.

## C. JURISDICTION AND VENUE

21. Jurisdiction over Defendants is based on 42 Pa. C.S.A § 5301 and is therefore proper in this Court.

22. Venue is proper pursuant to Pa. R.C.P. No. 2179 because Defendants regularly conduct substantial business in Philadelphia County, Pennsylvania, and because Janssen is a citizen of Pennsylvania.

6

23. At all times relevant to this action, Defendants engaged, either directly or indirectly, in the business of marketing, promoting, distributing, and selling prescription drug products, including Invokana and Invokamet, within Pennsylvania, with a reasonable expectation that the products would be used or consumed in this state, and thus regularly solicited or transacted business in this state.

24. At all times relevant to this action, Defendants were engaged in substantial business activities in Pennsylvania, including disseminating inaccurate, false, and misleading information about Invokana and Invokamet to health care professionals in Pennsylvania, with a reasonable expectation that such information would be used and relied upon by health care professionals throughout Pennsylvania and throughout the United States.

25. The amount in controversy exceeds, exclusive of interest and costs, $50,000.00.

### D.  FACTUAL ALLEGATIONS

26. This action is for damages brought on behalf of the Plaintiff. Karen Johnson was prescribed and supplied with, received and has taken the prescription drug Invokamet. This action seeks, among other relief, general and special damages and equitable relief due to Plaintiff suffering severe and life-threatening side effects of diabetic ketoacidosis, caused by this drug.

27. Invokamet is a combination of canagliflozin and metformin hydrochloride.

28. Invokana and Invokamet are members of the gliflozin class of pharmaceuticals, also known as sodium-glucose co-transporter 2 ("SGLT2") inhibitors.

29. SGLT2 inhibitors, including Invokana and Invokamet, inhibit renal glucose reabsorption through the SGLT2 receptor in the proximal renal tubules, causing glucose to be excreted through the urinary tract. This puts additional stress on the kidneys in patients already at risk for kidney disease.

7

30. SGLT2 inhibitors, including Invokana and Invokamet, are designed to target primarily the SGLT2 receptor, but have varying selectivity for this receptor, and block other sodium-glucose co-transporter receptors, including SGLT1.

31. The SGLT2 and SGLT1 receptors are located throughout the body, including in the kidney, intestines, and brain.

32. Invokana and Invokamet have the highest selectivity for the SGLT1 receptor among SGLT2 inhibitors currently marketed in the United States.

33. SGLT2 inhibitors, including Invokana and Invokamet, are currently approved only for improvement of glycemic control in adults with type 2 diabetes.

34. At all times herein mentioned, the Defendants were engaged in the business of researching, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale or selling the prescription drug Invokana and Invokamet for the use and application by patients with diabetes, including, but not limited to, Plaintiff.

35. On information and belief, Defendants Tanabe, Tanabe Holdings, Tanabe Development, and Tanabe Research, in collaboration with the other Defendants, designed developed, and marketed Invokana and Invokamet in the United States, and has made misrepresentations regarding the safety of the drugs.

36. Defendant J&J, the parent company of Janssen, is involved in the marketing and branding of Invokana and Invokamet, and publishes marketing and warnings regarding the product.

37. Because Invokana and Invokamet share the same active ingredient that make them both members of the SGLT2 class of drugs (canagliflozin), and because Invokamet is equivalent to

8

Invokana plus metformin, doctors and patients consider studies, warnings, representations, advertisements, warrantees, guarantees, and claims made about Invokana to apply equally to Invokamet.

38. Indeed, Defendants have published advertisements on their company websites and issued press releases announcing favorable information about Invokana and Invokamet. For example, the FDA's approval of Invokana on March 29, 2013 was announced on the J&J web site. On April 1, 2013, Tanabe announced the approval of Invokana in the United States as a new treatment option for Type 2 diabetes. On March 14, 2016, the J&J issued a press release announcing "First Real-World Evidence Comparing an SGLT2 Inhibitor with DPP-4 Inhibitors Shows Adults with Type 2 Diabetes Achieve Greater Blood Glucose Control with INVOKANA® (canagliflozin)". The former announcements did not contain warnings about ketoacidosis, serious infections, etc., while the latter announcement mentioned these conditions.

39. Through these advertisements, press releases, publications, and web sites, J&J has purposefully directed activities at residents of Pennsylvania and Philadelphia.

40. The Invokana/Invokamet-related pages on the Defendants' web sites are accessible from within Pennsylvania and Philadelphia, and have been indexed by search engines so that they are located through searches that are conducted from within Pennsylvania and Philadelphia.

41. Defendant J&J also published information touting the strong sales of Invokana in its corporate reports and in earnings calls.

42. Further, J&J employees had responsibility for overseeing promotion strategies for Invokana and Invokamet.

9

43. All marketing materials, advertisements, press releases, web site publications, dear doctor letters, and other communications regarding Invokana and Invokamet are part of the design and labeling of the drugs, and could be altered without prior FDA approval.

44. Defendant J&J had the ability and the duty to independently alter the design and labeling of Invokana and Invokamet. Specifically, it could independently publish additional warnings regarding Invokana and Invokamet, particularly the propensity of the drugs to cause diabetic ketoacidosis, renal injury, renal failure, severe infection, bone fracture, etc.

45. Defendant J&J so substantially dominates and controls the operations of Janssen, Janssen R&D, and Janssen Ortho, that it could have required them to make changes to the safety label of the drugs Invokana and Invokamet.

46. J&J employees hold key roles in the design, development, regulatory approval, manufacturing, distribution, and marketing of Invokana and Invokamet and direct these activities on behalf of J&J, Janssen, Janssen R&D, and Janssen Ortho.

47. In fact, J&J so substantially dominates and controls the operations of Janssen, Janssen R&D, and Janssen Ortho, that the entities are indistinct for purposes of this litigation such that Janssen, Janssen R&D, and Janssen Ortho should be considered agents or departments of J&J, and J&J is their alter-ego.

48. Employees of Tanabe, Tanabe Holdings, Tanabe Research, and Tanabe Development hold key roles in the design, development, regulatory approval, manufacturing, distribution, and marketing of Invokana and Invokamet and direct these activities on behalf of J&J, Janssen, Janssen R&D, and Janssen Ortho.

49. On information and belief, Defendant Janssen Ortho failed to properly manufacture Invokana and Invokamet to ensure consistent quality with each batch that matched the (flawed)

10

design specifications. The failure of consistent manufacture stemmed from faulty manufacturing processes, sub-par raw materials, and failure to properly clean and maintain equipment and other manufacturing facilities to ensure no cross-contamination from microbes and cleaning products.

50. On information and belief, manufacturing defects contributed to and caused injuries described elsewhere in this complaint.

51. Defendant Janssen, a wholly owned subsidiary of J&J, acquired the marketing rights to Invokana and Invokamet in North America, and marketed, advertised, distributed, and sold Invokana and Invokamet in the United States, including in Pennsylvania and Philadelphia.

52. In May, 2012, Janssen R&D submitted a New Drug Application to the FDA for approval to market Invokana in the United States.

53. In March 2013, the FDA approved Invokana as an adjunct to diet and exercise for the improvement of glycemic control in adults with the treatment of type 2 diabetes.

54. In August, 2014, the FDA approved Invokamet as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus who are not adequately controlled by treatment that includes either canagliflozin or metformin, or who are already being treated with both canagliflozin and metformin as separate medications.

55. As part of its marketing approval of Invokana and Invokamet, the FDA required the defendants to conduct five post-marketing studies: a cardiovascular outcomes trial; an enhanced pharmacovigilance program to monitor for malignancies, serious cases of pancreatitis, severe hypersensitivity reactions, photosensitivity reactions, liver abnormalities, and adverse pregnancy outcomes; a bone safety study; and two pediatric studies under the Pediatric Research Equity Act (PREA), including a pharmacokinetic and pharmacodynamic study and a safety and efficacy study.

11

56. In an effort to increase sales and market share, Defendants have aggressively marketed and continue to aggressively market Invokana and Invokamet to doctors and directly to patients for off-label purposes, including, but not limited to weight loss, reduced blood pressure, kidney benefits, cardiovascular benefits, and for use in type 1 diabetics.

57. Defendants also, through their marketing materials, misrepresented and exaggerated the effectiveness of Invokana and Invokamet, both as to its ability to lower glucose, and its benefit for non-surrogate measures of health, such as reducing adverse cardiovascular outcomes.

58. Defendants' marketing campaign willfully and intentionally misrepresented the risks of Invokana and Invokamet and failed to warn about the risks of diabetic ketoacidosis, kidney failure, and cardiovascular injury.

59. Defendants' misrepresentations and off-label advertising campaigns have led to Invokana and Invokamet being for off-label uses, in people with type 1 diabetes, for weight loss, and reduced blood pressure.

60. Invokana and Invokamet are Defendants' top selling drugs, with annual sales exceeding $1 billion.

61. At all times herein mentioned, Defendants were authorized to do business within Tennessee and Pennsylvania.

62. At all times herein mentioned, the officers and directors of Defendants participated in, authorized, and directed the production and promotion of the aforementioned product when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said product and thereby actively participated in the tortious conduct which resulted in the injuries suffered by Plaintiff herein.

12

63. Defendants, both individually and in concert with one another, misrepresented that Invokana and Invokamet are a safe and effective treatment for type 2 diabetes mellitus when in fact the drugs cause serious medical problems which require hospitalization and can lead to life threatening complications, including but not limited to diabetic ketoacidosis and its sequelae, kidney failure and its sequelae, as well as serious cardiovascular problems.

64. Specifically, Defendants knew or should have known of the risks of diabetic ketoacidosis and kidney failure based on the data available to them or that could have been generated by them, including, but not limited to animal studies, mechanisms of action, pharmacodynamics, pharmacokinetics, pre-clinical studies, clinical studies, animal models, genetic models, analogous compounds, analogous conditions, adverse event reports, case reports, post-marketing reports, and regulatory authority investigations, including, but not limited to the following:

a. Invokana and Invokamet selectivity for the SGLT1 receptor;

b. Animal studies demonstrating increased ketones when given Invokana and Invokamet;

c. Studies of phlorizin indicating a propensity to cause ketoacidosis;

d. Reports involving people with familial glycosuria, indicating a propensity to develop ketoacidosis;

e. Clinical studies demonstrating increases in glucagon in people taking Invokana and Invokamet;

f. Clinical studies, adverse event reports, and case reports demonstrating increased ketones in people taking Invokana and Invokamet;

13

g.    Clinical studies, adverse event reports, and case reports demonstrating dehydration and volume depletion in people taking Invokana and Invokamet;

h.    Clinical studies, adverse event reports, and case reports demonstrating vomiting in people taking Invokana and Invokamet;

i.    Clinical studies, adverse event reports, and case reports demonstrating re-challenge responses in increasing ketones and diabetic ketoacidosis in people taking Invokana and Invokamet; and

j.    Adverse event report analysis demonstrating an increased rate of reports for ketoacidosis in people taking Invokana and Invokamet compared to other glucose-lowering medications.

65. Diabetic ketoacidosis may lead to complications such as cerebral edema, pulmonary edema, cerebrovascular accident, myocardial infarction, nonspecific myocardial injury, severe dehydration, and coma.

66. Invokana- and Invokamet-induced diabetic ketoacidosis may lead to delayed treatment because in many cases Invokana and Invokamet will keep blood sugar below 250 mg/dl, a threshold often used when diagnosing diabetic ketoacidosis. This may result in increased progression of the condition and increased injury to the patient.

67. Defendants were aware that the mechanism of action for Invokana and Invokamet places extraordinary strain on the kidneys and renal system.

68. Despite its knowledge of data indicating that Invokana and Invokamet use is causally related to the development of diabetic ketoacidosis and kidney failure, Defendants promoted and marketed Invokana and Invokamet as safe and effective for persons such as Plaintiff throughout the United States, including Pennsylvania and Philadelphia.

14

69. Despite Defendants' knowledge of the increased risk of severe injury among Invokana and Invokamet users, Defendants did not warn patients but instead continued to defend Invokana and Invokamet, mislead physicians and the public, and minimized unfavorable findings.

70. Defendants failed to adequately warn consumers and physicians about the risks associated with Invokana and Invokamet and the monitoring required to ensure their patients' safety.

71. Despite Defendants' knowledge of the increased risk of severe injury among Invokana and Invokamet users, Defendants did not conduct the necessary additional studies to properly evaluate these risks prior to marketing the drugs to the general public.

72. Consumers of Invokana and Invokamet and their physicians relied on the Defendants' false representations and were misled as to the drugs' safety, and as a result have suffered injuries including diabetic ketoacidosis, kidney failure, cardiovascular problems, and the life-threatening complications thereof.

73. Consumers, including Plaintiff, have several alternatives safer methods for treating diabetes, including diet and exercise and other antidiabetic agents.

74. Plaintiff was prescribed Invokamet by her treating physician and used it as directed.

75. Plaintiff was prescribed Invokamet to improve glycemic control as an adjunct to diet and exercise on or about January 15, 2015.

76. While taking Invokamet, Plaintiff developed diabetic ketoacidosis on or about April 16, 2015 as a result of treatment with Invokamet, and was hospitalized at University of Tennessee Medical Center, located in Knoxville, TN.

77. As a result of her development of diabetic ketoacidosis, Plaintiff developed serious complications which required multiple days of hospitalization.

15

78. Plaintiff has endured pain and suffering, emotional distress, loss of enjoyment of life, and economic loss, including significant expenses for medical care and treatment which will continue in the future. Plaintiff seeks actual, compensatory, and punitive damages from Defendants.

79. Defendants' wrongful acts, omissions, and fraudulent misrepresentations caused Plaintiff's injuries and damages.

80. Defendants, both individually and in concert with one another, misrepresented that Invokana and Invokamet are safe and effective treatments for type 2 diabetes mellitus when in fact the drugs cause serious medical problems which require hospitalization and can lead to life threatening complications, including but not limited to diabetic ketoacidosis and its sequelae, kidney failure and its sequelae, as well as serious cardiovascular problems.

81. Plaintiff's injuries were preventable and resulted directly from Defendants' failure and refusal to conduct proper safety studies, failure to properly assess and publicize alarming safety signals, suppression of information revealing serious and life-threatening risks, willful and wanton failure to provide adequate instructions, and willful misrepresentations concerning the nature and safety of Invokamet. This conduct and the product defects complained of were substantial factors in bringing about and exacerbating Plaintiff' injuries.

82. Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff and her physicians the true and significant risks associated with taking Invokamet.

83. On information and belief, Defendants, both individually and in concert with one another, withheld material information from the FDA and misrepresented material information regarding the risks and benefits of Invokana and Invokamet in its communications with the FDA.

These omissions and misrepresentations included failing to report instances of diabetic ketoacidosis to the FDA, failure to properly categorize adverse events in clinical trials, post-marketing trials, and obtained through its adverse event reporting system, and withholding of relevant information from pre-clinical and clinical trials.

84. On May 15, 2015 the FDA announced that SGLT2 inhibitors may lead to diabetic ketoacidosis.

85. On September 10, 2015, the FDA announced that Invokana and Invokamet cause premature bone loss and fractures.

86. On October 16, 2015, Health Canada, the Canadian drug regulatory authority, announced that Invokana and Invokamet can cause acute kidney injury.

87. On December 4, 2015, the FDA announced a label change for SGLT2 inhibitors, requiring that the label of SGLT2 inhibitors include a warning of ketoacidosis, the risk of too much acid in the blood, while taking SGLT2 inhibitors.

88. Prior to the FDA's December 4, 2015 safety announcement, Invokana and Invokamet's label continued to fail to warn consumers of the serious risk of developing diabetic ketoacidosis.

89. The Invokana and Invokamet labels currently do not warn of the serious risks of developing bone fractures and kidney injury.

90. Despite the FDA's announcements, Defendants continue to engage in aggressive direct-to-consumer and physician marketing and advertising campaigns for Invokana and Invokamet.

91. Defendants failed to ensure that full and correct safety labeling and warnings were used in pharmacy sheets that accompanied Invokana and Invokamet to the purchaser.

17

92. At all times mentioned herein, Defendants knew, or in the exercise of reasonable care should have known, that Invokana and Invokamet were of such a nature that they were not properly designed, manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared, and/or provided with proper warnings, was not suitable for the purpose it was intended and was unreasonably likely to injure the product's users.

93. Defendants had a duty to warn Plaintiff's prescribing physicians about the risks of Invokamet use, including the risk of diabetic ketoacidosis and resulting complications.

94. Had Plaintiff and her physicians known the true risks associated with the use of SGLT2 inhibitors, including Invokamet, plaintiff would not have been prescribed Invokamet, and plaintiff would not have taken Invokamet or plaintiff would have been adequately monitored for its side effects, and as a result, would not have suffered injuries and damages from using Invokamet.

95. Plaintiff's prescribing and treating physicians relied on claims made by Defendants that Invokamet has been clinically shown to improve glycemic control and was generally safe and effective. These claims were reached Plaintiff's prescribing and treating physicians directly, through print and television advertising, articles and study reports funded and promoted by Defendants, and indirectly, through other healthcare providers and others who have been exposed to Defendants' claims through its comprehensive marketing campaigns.

96. Plaintiff relied on claims made by Defendants that Invokamet has been clinically shown to improve glycemic control and was generally safe and effective. These claims reached Plaintiff directly, through print and television advertising, and indirectly, through Plaintiff's healthcare providers and others who have been exposed to Defendants' claims through their comprehensive marketing campaigns.

18

97. Based on Defendants' direct-to-consumer advertising and Defendants' misrepresentations and omissions, Plaintiff made an independent decision to use Invokamet based on the overall benefits and risks communicated by Defendants.

98. Plaintiff's injuries were a reasonably foreseeable consequence of Defendants' conduct and Invokamet's defects, and were not reasonably foreseeable to Plaintiff or Plaintiff's physicians.

99. As a foreseeable, direct, and proximate consequence of Defendants' actions, omissions, and misrepresentations, Plaintiff suffered injury. In addition, Plaintiff requires and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions, activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include physician care, monitoring, and treatment. Plaintiff has incurred and will continue to incur mental and physical pain and suffering.

100.    Plaintiff files this lawsuit within the applicable limitations period of first suspecting that Invokamet caused the appreciable harm sustained by Plaintiff. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of Plaintiff' injuries as their cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, that they had been injured, the cause of the injuries, or the tortious nature of the conduct causing the injuries, until less than the applicable limitations period prior to the filing of this action. Additionally, Plaintiff was prevented from discovering this information sooner because Defendants misrepresented and continue to misrepresent to the public and to the medical profession that the drug Invokamet is safe and free from serious side effects, and Defendants have

19

fraudulently concealed facts and information that could have led Plaintiff to discover a potential cause of action.

## I. CAUSES OF ACTION

### Count One – Design Defect (Strict Liability)

101.    Plaintiff adopts by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

102.    Defendants designed, developed, researched, tested, licensed, manufactured, packaged, labeled, promoted, marketed, sold, and distributed Invokana and Invokamet in a defective and unreasonably dangerous condition, including the Invokana used by Plaintiff.

103.    The design defect was caused by Defendants' failure to:

   a.    Adequately test Invokana and Invokamet;

   b.    Develop and provide a product label and marketing materials that accurately describes the risks of and does not overstate the benefits of using Invokana and Invokamet;

   c.    Provide full, complete, and accurate information to the FDA about Invokana and Invokamet;

   d.    Adequately test and study Invokana and Invokamet;

   e.    Ensure that the benefits of Invokana and Invokamet outweighed the risks for people susceptible to diabetic ketoacidosis, kidney failure or other adverse effects;

   f.    Conduct adequate post-market surveillance; and

   g.    Use a safer alternative formulation.

104.    The design defect made Invokana and Invokamet more dangerous than an ordinary consumer would expect and more dangerous than other drugs used to treat diabetes.

105.    The design defect was such that the risks of Invokana and Invokamet outweighed its utility.

106.    This danger was unknowable to Plaintiff and would be considered unacceptable to the average consumer.

107.    There were practical and technically feasible alternative designs that would not have reduced the utility of Invokana and Invokamet and would not have cost substantially more to develop, including, but not limited to providing a better warning with Invokana and Invokamet, using an alternative diabetes treatment, or developing an SLGT2 inhibitor with a different safety profile.

108.    The label is part of the design of Invokana and Invokamet, and therefore the design can be changed. Specifically, the label could have included a contraindication for people whose ketones increase, which would have alerted doctors and patients that the drugs Invokana and Invokamet are not suitable for that population because the risks outweigh the benefits.

109.    Defendants' defective design of Invokana and Invokamet was reckless, willful, wanton, fraudulent, malicious, and done with reckless disregard for the health and safety of users of Invokana and Invokamet. Defendants made conscious decisions not to redesign, adequately warn, or inform the unsuspecting public. Defendants' reckless conduct warrants an award of punitive damages. Defendants' conduct was motivated by greed and the intentional decision to value profits over the safety and well-being of the consumers of Invokana and Invokamet.

110.    Plaintiff was prescribed and used Invokamet for its intended purposes and for purposes that Defendants expected and could foresee.

21

111.   Defendants expected and intended Invokamet to reach, and it did in fact reach, Plaintiff without any substantial change in the condition of the product from when it was initially manufactured by Defendants.

112.   Defendants, as manufacturers of pharmaceutical drugs, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known of the design defects.

113.   Plaintiff and Plaintiff's physicians did not have the same knowledge or expertise as Defendants and could not have discovered any defect in Invokamet through the exercise of reasonable care.

114.   As a direct and proximate cause of Defendants' manufacture, sale and promotion of the defectively designed drug, Plaintiff sustained permanent injury.

115.   The defects in Invokamet were substantial contributing factors in causing Plaintiff' injuries.

### Count Two – Failure to Warn (Strict Liability)

116.   Plaintiff adopts by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

117.   The Defendants are liable under the theory of product liability as set forth in §§ 402A and 402B of the Restatement of Torts 2d and Restatement, Third, of Torts.

118.   Defendants designed, developed, researched, tested, licensed, manufactured, packaged, labeled, promoted, marketed, sold, and distributed Invokana and Invokamet in a defective and unreasonably dangerous condition, including the Invokamet used by Plaintiff. The design defect made Invokana and Invokamet more dangerous than an ordinary consumer would expect and more dangerous than other drugs used to treat diabetes.

22

119.    Invokana and Invokamet's inadequate warnings rendered the drugs unreasonably dangerous and defective.

120.    Defendants' defective warnings for Invokana and Invokamet were reckless, willful, wanton, fraudulent, malicious, and done with reckless disregard for the health and safety of users of Invokana and Invokamet. Defendants made conscious decisions not to adequately warn about risks they know or should have known about. Defendants' reckless conduct warrants an award of punitive damages. Defendants' conduct was motivated by greed and the intentional decision to value profits over the safety and well-being of the consumers of Invokana and Invokamet.

121.    Plaintiff was prescribed and used Invokamet for its intended purposes and for purposes that Defendants expected and could foresee.

122.    Defendants expected and intended Invokamet to reach, and it did in fact reach, Plaintiff without any substantial change in the condition of the product from when it was initially manufactured by Defendants.

123.    Plaintiff could not have discovered the unwarned of risks of using Invokamet through the exercise of reasonable care.

124.    Defendants, as manufacturers of pharmaceutical drugs, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that the warnings and other relevant information and data which they distributed regarding the risks of injuries and death associated with the use of Invokana and Invokamet were incomplete and inadequate.

125.    Plaintiff did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiff or to Plaintiff's

23

treating physicians. The warnings that were given by the Defendants were not accurate and were incomplete.

126. Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, supply, warn, and take other such steps as necessary to ensure that Invokana and Invokamet did not cause users to suffer from unreasonable and dangerous risks.

127. Defendants knew or should have known that the limited warnings disseminated with Invokana and Invokamet were inadequate, but they failed to communicate adequate information on the dangers and safe use of their product, taking into account the characteristics of and the ordinary knowledge common to physicians who would be expected to prescribe the drugs. In particular, Defendants failed to communicate warnings and instructions to doctors that were appropriate and adequate to render the product safe for its ordinary, intended, and reasonably foreseeable uses, including the common, foreseeable, and intended use of the product for treatment of diabetes.

128. As a direct and proximate cause of Defendants' manufacture, sale and promotion of the defectively designed drug, and failure to warn Plaintiff and her physicians about the significant risks inherent in Invokamet therapy, Plaintiff sustained permanent injury.

### Count Three – Negligence

129. Plaintiff adopts by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

130. At all times relevant times, Defendants had a duty to use reasonable care to properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research,

24

distribute, market, label, package, distribute, prepare for use, sell, prescribe and adequately warn of the risks and dangers of Invokana and Invokamet.

131.    At all times material hereto, Defendants had actual knowledge, or in the alternative, should have known through the exercise of reasonable and prudent care, of the hazards and dangers of Invokana and Invokamet to cause or increase the harm of diabetic ketoacidosis, kidney failure, cardiovascular problems, and the life threatening complications of those conditions.

132.    Defendants had a duty to exercise due care and avoid unreasonable risk of harm to others when developing and selling Invokana and Invokamet.

133.    Defendants had a duty to disclose to physicians, healthcare providers, and patients the causal relationship or association of Invokana and Invokamet to diabetic ketoacidosis, kidney failure, cardiovascular problems and the life threatening complications of those conditions.

134.    Defendants had a duty to accurately communicate the risks and benefits of Invokana and Invokamet to physicians, healthcare provides, and patients.

135.    As a result of the Defendants' aggressive marketing campaigns promoting off-label uses, including for type 1 diabetes, weight loss, and to improve blood pressure and kidney function, Defendants knew or should have known and expected that consumers would use Invokana and Invokamet for such off-label uses.

136.    Defendants knew or should have known that some patients would develop serious injuries that were not adequately warned about, including diabetic ketoacidosis, kidney failure, and cardiovascular injury, and these injuries were foreseeable.

137.    Plaintiff did not know the nature and extent of the injuries that could result from Invokana and Invokamet and was misinformed about the benefits of Invokamet and could not have discovered this information independently.

25

138.    At all times herein mentioned, Defendants breached their duty of care by failing to exercise reasonable and ordinary care and negligently and carelessly manufacturing, designing, formulating, distributing, compounding, producing, processing, assembling, inspecting, distributing, marketing, labeling, packaging, preparing for use, and selling Invokana and Invokamet, and failing to adequately test and warn of the risks and dangers of Invokana and Invokamet.

139.    Despite the fact that Defendants knew or should have known that Invokana and Invokamet caused unreasonable, dangerous side effects, Defendants continued to market Invokana and Invokamet to consumers including Plaintiff, when there were safer alternative methods available.

140.    Defendants' negligence was a foreseeable and proximate cause of the Plaintiff' injuries, harm and economic loss which Plaintiff suffered, and will continue to suffer, as described and prayed for herein.

### Count Four – Gross Negligence

141.    Plaintiff adopts by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

142.    Defendants had a duty to provide adequate warnings and accurately describe the risks and benefits of taking Invokana and Invokamet.

143.    Defendants breached that duty.

144.    The wrongs done by Defendants were aggravated by malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiff, in that Defendants' conduct was specifically intended to cause substantial injury to Plaintiff.

26

145.   When viewed objectively from Defendants' standpoint at the time of the conduct, considering the probability and magnitude of the potential harm to others, Defendants' conduct involved an extreme degree of risk.

146.   Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with complete indifference to or a conscious and deliberate disregard for to the rights, safety, or welfare of others. Moreover, Defendants made material representations that were false, with actual knowledge of or reckless disregard for their falsity, with the intent that the representations be acted on by Plaintiff and her healthcare providers.

147.   The acts and omissions of Defendants, whether taken singularly or in combination with others, constitute gross negligence that proximately caused the injuries to Plaintiff.

148.   Defendants, both individually and in concert with one another, intentionally and fraudulently misrepresented facts and information to both the medical community and the general public, including Plaintiff, by making intentionally false and fraudulent misrepresentations about the safety of Invokana and Invokamet. Defendants intentionally concealed the true facts and information regarding the serious risks of harm associated with the ingestion of Invokana and Invokamet, and intentionally downplayed the type, nature, and extent of the adverse side effects of ingesting Invokana and Invokamet, despite their knowledge and awareness of these serious side effects and risks.

149.   Defendants had knowledge of, and were in possession of evidence demonstrating that Invokana and Invokamet caused serious side effects. Notwithstanding Defendants' knowledge, Defendants continued to market the drugs by providing false and misleading information with regard to the product's safety to regulatory agencies, the medical community, and consumers of Invokana and Invokamet.

27

150.  Although Defendants knew or recklessly disregarded the fact that Invokana and Invokamet causes debilitating and potentially lethal side effects, Defendants continued to market, promote, and distribute Invokana and Invokamet to consumers, including Plaintiff, without disclosing these side effects when there were safer alternative methods for treating diabetes.

151.  Plaintiff reasonably relied on Defendants' representations and suffered injuries as a proximate result of that reliance.

152.  Plaintiff is entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, and malicious acts, omissions, and conduct, and Defendants' reckless disregard for the public safety and welfare.

### Count Five – Breach of Express Warranty

153.  Plaintiff adopts by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

154.  At all relevant times, Defendants expressly represented and warranted to Plaintiff and Plaintiff's physicians and health care providers, by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts, marketing, and other written materials intended for physicians, medical patients and the general public, that Invokana and Invokamet were safe, effective, fit and proper for its intended use, of merchantable quality, had been adequately tested, contained adequate warnings, and was efficacious.

155.  In particular, the "Warnings and Precautions" section of the Invokana and Invokamet prescribing information purports to expressly describe the relevant and material potential side-effects that Defendants knew or should have known about.

28

156.   In particular, the Consumer Medication Guide expressly indicates (e.g.,) "What is the most important information I should know about INVOKANA?" and "What are the possible side effects of INVOKANA?" and "General information about the safe and effective use of INVOKANA" and does not mention that Invokana or Invokamet has been associated with diabetic ketoacidosis, kidney failure, or cardiovascular adverse events.

157.   Furthermore, Defendants J&J, Janssen, Janssen R&D, Janssen Ortho, Tanabe, Tanabe Holdings, Tanabe Research, and Tanabe Development, in advertisements through their respective websites, and press releases issued by the respective defendants, stated that Invokana and Invokamet were generally well tolerated and safe for use, and were not likely to cause side effects other than the ones listed—these listed side effects did not include diabetic ketoacidosis, renal injury or renal failure, bone fractures, etc.

158.   Plaintiff's physician prescribed Invokamet and Plaintiff purchased and consumed Invokamet reasonably relying upon these warranties; Plaintiff and Plaintiff's physicians did not know and could not have learned independently that Defendants' representations were false and misleading.

159.   Defendants knew and expected or should have known and expected, and intended Plaintiff to rely on their warranties.

160.   The representations contained or constituted affirmations of fact or promises made by the seller to the buyer which related to the goods and became part of the basis of the bargain creating an express warranty that the goods shall conform to the affirmations of fact or promises.

161.   In utilizing Invokamet, Plaintiff reasonably relied on the skill, judgment, representations, and foregoing express warranties of Defendants.

29

162.    These warranties and representations were false in that Invokana and Invokamet are not safe, effective, fit and proper for its intended use because of its propensity to cause, among other conditions, diabetic ketoacidosis, kidney failure, and cardiovascular problems.

163.    Because Invokana and Invokamet did not conform to Defendants' express representation, Defendants breached the warranties.

164.    As a foreseeable, direct, and proximate result of the breach of express warranties by Defendants, Plaintiff suffered injuries and damages as alleged herein.

**Count Six – Breach of Implied Warranty**

165.    Plaintiff adopts by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

166.    At all relevant times, Defendants implied to Plaintiff and Plaintiff's physicians and health care providers, by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts, marketing, and other written materials intended for physicians, medical patients and the general public, that Invokana and Invokamet were safe, effective, fit and proper for its intended use, of merchantable quality, had been adequately tested, contained adequate warnings, and was efficacious.

167.    In particular, the "Warnings and Precautions" section of the Invokana and Invokamet prescribing information implies that it fully describes the relevant and material potential side-effects that Defendants knew or should have known about.

168.    In particular the Consumer Medication Guide implies by omission in the sections entitled "What is the most important information I should know about INVOKANA?" and "What are the possible side effects of INVOKANA?" and "General information about the safe and

30

effective use of INVOKANA" that Invokana has not been associated with diabetic ketoacidosis, kidney failure, or cardiovascular adverse events.

169.    Plaintiff's physician prescribed Invokamet and Plaintiff purchased and consumed Invokamet reasonably relying upon these warranties, and Plaintiff and Plaintiff's physicians did not know and could not have learned independently that Defendants' representations were false and misleading.

170.    Defendants know or should have known and expected or should have expected, and intended Plaintiff to rely on their warranties.

171.    The representations contained or constituted affirmations of fact or promises made by the seller to the buyer which related to the goods and became part of the basis of the bargain creating an express warranty that the goods shall conform to the affirmations of fact or promises.

172.    In utilizing Invokamet, Plaintiff reasonably relied on the skill, judgment, representations, and foregoing implied warranties of Defendants.

173.    These warranties and representations were false in that Invokana and Invokamet are not safe, effective, fit and proper for its intended use because of its propensity to cause, among other conditions, diabetic ketoacidosis, kidney failure, and cardiovascular problems.

174.    Because Invokana and Invokamet did not conform to Defendants' representation, Defendants breached the implied warranties.

175.    As a foreseeable, direct, and proximate result of the breach of warranties by Defendants, Plaintiff suffered injuries and damages as alleged herein.

### Count Seven – Fraudulent Misrepresentation

176.    Plaintiff adopts by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

31

177.    Defendants, both individually and in concert with one another, intentionally and fraudulently misrepresented the safety and efficacy of Invokana and Invokamet in the product label and through their marketing activities.

178.    In particular, Defendants intentionally and fraudulently:

a.    Failed to adequately warn about the risk of diabetic ketoacidosis;

b.    Failed to provide full and complete information about Invokana and Invokamet to the FDA;

c.    Provided a product label to Plaintiff's physicians that did not adequately disclose the risks that Defendants knew of;

d.    Provided consumer information that did not adequately disclose the risks that Defendants knew of;

e.    Overstated the benefits of Invokana and Invokamet; and

f.    Marketed Invokana and Invokamet for unapproved uses such as weight loss and lowering blood pressure.

179.    Furthermore, Defendants J&J, Janssen, Janssen R&D, Janssen Ortho, Tanabe, Tanabe Holdings, Tanabe Research, and Tanabe Development, in advertisements through their respective websites, and press releases issued by the respective defendants, stated that Invokana and Invokamet were generally well tolerated and safe for use, and were not likely to cause side effects other than the ones listed—these listed side effects did not include diabetic ketoacidosis, renal injury or renal failure, bone fractures, etc.

180.    The representations were made by the Defendants with the intent that doctors and patients, including Plaintiff and Plaintiff's physicians, rely upon them, in willful, wanton, and

32

reckless disregard for the lack of truthfulness of the representations and with the intent to defraud and deceive Plaintiff and Plaintiff's physicians.

181.   Plaintiff and Plaintiff's physicians reasonably relied on the fraudulent misrepresentations both as communicated to them directly from Defendants and as communicated to them by others exposed to Defendants' pervasive marketing campaigns.

### Count Eight – Negligent Misrepresentation

182.   Plaintiff adopts by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

183.   From the time Invokana and Invokamet were first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendants made misrepresentations to Plaintiff, Plaintiff's physicians and health care providers, and the general public, including but not limited to the misrepresentation that Invokana and Invokamet were safe, fit, and effective for human consumption.

184.   Defendants owed a duty to Plaintiff to exercise reasonable care to ensure they did not misrepresent the safety or efficacy of Invokana and Invokamet nor create unreasonable risks of injury to others, and failed to exercise that reasonable care and therefore breached their duty.

185.   The Defendants made the foregoing misrepresentations without any reasonable grounds for believing them to be true, and were, in fact, reckless.

186.   The Defendants had a duty to correct these material misstatements because they knew or should have known that they were inaccurate and that others would reasonably rely on them and suffer injury.

187.   These misrepresentations were made directly by Defendants, by sales representatives and other authorized agents of Defendants, and in publications and other written

33

materials directed to physicians, medical patients and the public, with the intention of inducing reliance and the prescription, purchase and use of the subject product.

188.   The representations by the Defendants were in fact false, in that Invokana and Invokamet are not safe, fit and effective for human consumption, using Invokana and Invokamet are hazardous to health, and Invokana and Invokamet have a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff.

189.   The foregoing representations by Defendants were made with the expectation and intention of inducing reliance upon them and increasing the prescription, purchase and use of Invokana and Invokamet.

190.   Plaintiff reasonably relied on the misrepresentations made by the Defendant to their detriment.

191.   In reliance of the misrepresentations by the Defendants, and each of them, Plaintiff was induced to purchase and use Invokamet.

192.   If Plaintiff had known of the true facts and the facts concealed by the Defendants, Plaintiff would not have used Invokamet.

193.   The reliance of Plaintiff upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

194.   As a direct, proximate, and foreseeable result of Defendants' negligent misrepresentations, Plaintiff suffered injuries and damages as alleged herein.

### Count Nine – Fraudulent Concealment

195.   Plaintiff adopts by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

34

196.    At all relevant times, Defendants knew that Invokana and Invokamet were defective, unreasonably unsafe, and that its risks were understated and its benefits were overstated.

197.    Defendants willfully, intentionally and fraudulently concealed their knowledge of this from Plaintiff, Plaintiff's physicians, and the public, and instead knowingly provided false information.

198.    Defendants withheld information that they had a duty to disclose through Invokana and Invokamet's labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that Invokana and Invokamet were safe and effective.

199.    Defendants withheld information about the severity of the substantial risks of using Invokana and Invokamet and their knowledge of the safety signals regarding adverse effects of Invokana and Invokamet.

200.    Defendants withheld information that Invokana and Invokamet were not safer or more effective than alternative diabetes medications available on the market.

201.    The above facts were material would have been considered important to a reasonable person.

202.    Had the above facts been disclosed, they would have changed Plaintiff's decision to take Invokamet and Plaintiff's physician's decision to prescribe it.

203.    Defendants had a duty to disclose this information to Plaintiff and Plaintiff's physicians.

204.    Defendants had sole access to material facts concerning, and unique and special knowledge and expertise regarding, the dangers and unreasonable risks of Invokana and Invokamet.

35

205.    Defendants knew or should have known and expected or should have expected and intended that Plaintiff and Plaintiff's physicians rely on the inaccurate information they provided.

206.    As a foreseeable, direct, and proximate result of Defendants' actions and fraudulent concealment, Plaintiff suffered injury.

### Count Ten – Fraud

207.    Plaintiff adopts by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

208.    Defendants' intentional misrepresentations and concealments constitute fraud under state law and were made with the intent to defraud physicians and consumers, including Plaintiff and Plaintiff's physicians.

209.    Specifically Defendants intentionally and fraudulently did the following:

a.    Provided a "Warnings and Precautions" section of the Invokana and Invokamet prescribing information that purports to expressly describe the relevant and material potential side-effects that Defendants knew or should have known about, but in which material and relevant information was fraudulently withheld from this section;

b.    Provided Consumer Medication Guide that expressly indicates (e.g.) "What is the most important information I should know about INVOKANA?" and "What are the possible side effects of INVOKANA?" and "General information about the safe and effective use of INVOKANA" and fraudulently omits information that Invokana and Invokamet have been associated with diabetic ketoacidosis, kidney failure, or cardiovascular adverse events;

36

    c.   On information and belief, each and every advertisement and marketing channel fraudulently omits information about the risks of Invokana and Invokamet and overstates the benefits;

    d.   Failed to disclose that Invokana and Invokamet were not as safe and effective as other diabetes drugs;

    e.   Failed to disclose that Invokana and Invokamet do not result in safe and more effective diabetes treatments than other available drugs;

    f.   Failed to disclose that the risk of harm associated with Invokana and Invokamet were greater than the risk of harm associated with other diabetes drugs;

    g.   Failed to disclose that Defendants knew that Invokana and Invokamet were not adequately tested;

    h.   Failed to disclose that testing had revealed unreasonably high risk of injury;

    i.   On information and belief, failed to disclose that Defendants intentionally withheld safety information from the FDA; and

    j.   Affirmatively asserted that Invokana and Invokamet were safe and effective.

210.   Furthermore, Defendants J&J, Janssen, Janssen R&D, Janssen Ortho, Tanabe, Tanabe Holdings, Tanabe Research, and Tanabe Development in advertisements through their respective websites, and press releases issued by the respective defendants, stated that the drugs Invokana and Invokamet were generally well tolerated and safe for use, and was not likely to cause side effects other than the ones listed—these listed side effects did not include diabetic ketoacidosis, renal injury or renal failure, bone fractures, etc.

37

211.    Each defendant made the fraudulent statements to the public, generally, at numerous times throughout the marketing of Invokana and Invokamet, both individually, and in concert with each other.

212.    The number and extent of fraudulent marketing communications are too numerous to list and are so pervasive that they fraudulently influence healthcare providers and consumers even without direct exposure to the marketing information because, as intended by Defendants, others hear the fraudulent communications and come to believe them and communicate to others that Invokana and Invokamet were safe and effective.

213.    Plaintiff and Plaintiff's healthcare providers were exposed to the product label and medication guide and the fraudulently inaccurate information described above.

214.    Defendants had access to these facts, while Plaintiff and Plaintiff's physicians did not and were unaware of them and could not reasonably learn of them from an alternative source.

215.    The above facts were material to Plaintiff and Plaintiff's physician's decision to use and prescribe Invokamet, and they reasonably relied on Defendants' representations.

216.    As a direct, proximate, and foreseeable result of Defendants' fraud, they caused Plaintiff injuries.

### Count Eleven – Unjust Enrichment

217.    Plaintiff adopts by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

218.    Plaintiff conferred a benefit on Defendants by purchasing Invokamet.

219.    Plaintiff did not receive a safe and effective drug for which they paid.

220.    It would be inequitable for the Defendants to retain this money because Plaintiff did not, in fact, receive a safe and efficacious drug.

38

221.   By virtue of the conscious wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of Plaintiff, who hereby seeks the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

### Count Twelve – Violation of State Unfair Trade Practices and Consumer Protection Laws

222.   Plaintiff adopts by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

223.   Invokamet is a product pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201.1, *et seq.*, and the Tennessee Consumer Protection Act of 1977, Tenn. Code. § 47-18-101 *et seq.*, and other applicable state consumer protection statutes (the "Acts").

224.   Defendants knew, or should have known Invokana and Invokamet were defective in design and manufacture and its use created the risk of causing serious and life threatening injuries in patients, yet, Defendants knowingly, willfully, and intentionally failed to inform and warn the medical community and the consuming public, including Plaintiff, of these risks.

225.   In violation of the Acts, Defendants engaged in deception, fraud, false pretense, false promise, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts regarding the risk of harm associated with the use of Invokana and Invokamet, with the intent that others rely upon such concealment, suppression, or omission, in connection with its sale or advertisement. Defendants omitted and concealed material facts from Plaintiff and Plaintiff's physicians and healthcare providers in product packaging, labeling, medical advertising,

39

and promotional campaigns and materials, regarding the safety and use Invokana and Invokamet. Moreover, Defendants downplayed and understated the serious nature of the risks and dangers associated with the use of Invokana and Invokamet to increase their sales, to reap millions of dollars in profits from sales of their products, and to secure a greater market share.

226.    Defendants' statements and omissions were undertaken with the intent that the FDA, physicians, healthcare providers, and consumers, including Plaintiff, would rely on the Defendants' false and deceptive statements and omissions.

227.    Plaintiff's physicians and healthcare providers prescribed Invokamet to Plaintiff, who suffered ascertainable losses of money and property as a result of Defendants' fraudulent methods, acts, practices, and sale of Invokamet.

228.    Defendants' promotion and release Invokana and Invokamet into the stream of commerce constitutes an unconscionable commercial practice, deception, false pretense, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including Plaintiff, would rely upon such concealment, suppression, or omission in connection with the sale or advertisement of such merchandise or services by Defendants, in violation of the Acts.

229.    Defendants concealed, omitted, and/or minimized the risk of serious and harmful side effects of Invokana and Invokamet, and/or provided misinformation about adverse reactions, risks, and potential harm from the use of Invokana and Invokamet, and succeeded in persuading physicians to prescribe it despite Defendants' knowledge that it was, and is, unreasonably dangerous and of the risk of adverse health effects connected with Invokana and Invokamet, as described in this Complaint.

40

230.    Defendants' practice of promoting and marketing Invokana and Invokamet created and reinforced the false impression as to the safety of Invokana and Invokamet, thereby placing consumers at serious risk of potential lethal side effects from use of the drugs.

231.    Defendants violated their duty to warn, post-manufacture, of the injurious and sometimes fatal side effects that arose when Defendants knew, or with reasonable care should have known, that Invokana and Invokamet were injurious and sometimes fatal to consumers.

232.    Defendants intended, at the time Plaintiff's healthcare providers prescribed Invokana and Invokamet, that physicians and ultimately consumers, would reasonably rely upon the concealment, suppression, or omission by Defendants' officers, directors, agents, employees, principals, and representatives of the risks connected with the use of Invokana and Invokamet.

233.    Defendants' actions in connection with manufacturing, distributing, and marketing Invokana and Invokamet evidence a lack of good faith, the failure of honesty in fact, and failure of observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the Acts.

234.    Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless indifference for the health, safety, and well-being of the consumers of Invokana and Invokamet when committing the above-described acts of consumer fraud. As a foreseeable, direct, and proximate result of Defendants' fraud upon the consumers of Invokana and Invokamet, Plaintiff's healthcare providers prescribed (and Plaintiff and Plaintiff's insurance company, were billed for) an unreasonably dangerous and unsafe product and incurred monetary damages and expenses.

41

235.    As a proximate result of Defendants' acts and omissions and Plaintiff's ingestion of Invokamet, Plaintiff suffered serious physical injuries and incurred substantial medical costs and expenses.

### Punitive Damages Allegations

236.    Plaintiff adopts by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

237.    The acts, conduct, and omissions of Defendants, as alleged throughout this Complaint, were willful and malicious. Defendants committed these acts with a conscious disregard for the rights, health and safety of Plaintiff and other Invokana and Invokamet users and for the primary purpose of increasing Defendants' profits from the sale and distribution of Invokana and Invokamet. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

238.    Prior to the manufacturing, sale, and distribution of Invokana and Invokamet, Defendants knew that the drugs were in a defective condition as previously described and knew that those who were prescribed the medication would experience and did experience severe physical, mental, and emotional injuries. Further, Defendants, through their officers, directors, managers, and agents, knew that the medication presented a substantial and unreasonable risk of harm to the public, including Plaintiff, and as such, Defendants unreasonably subjected consumers of said drugs to risk of injury or death from using Invokana and Invokamet.

239.    Despite their knowledge, Defendants, acting through their officers, directors and managing agents, for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in Invokana and Invokamet and failed to warn the public,

including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in Invokana and Invokamet. Defendants and their agents, officers, and directors intentionally proceeded with the manufacturing, sale, distribution, and marketing of Invokana and Invokamet knowing these actions would expose persons to serious danger in order to advance Defendants' pecuniary interest and monetary profits.

240.    Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for the safety of Plaintiff and other consumers, entitling Plaintiff to exemplary damages.

## II. PRAYER

241.    **WHEREFORE,** Plaintiff prays for judgment against the Defendants, as follows, as appropriate to each cause of action alleged and as appropriate to the particular standing of Plaintiff:

    a.    General damages in an amount that will conform to proof at time of trial;

    b.    Special damages in an amount within the jurisdiction of this Court and according to proof at the time of trial;

    c.    Loss of earnings and impaired earning capacity according to proof at the time of trial;

    d.    Medical expenses, past and future, according to proof at the time of trial;

    e.    Past and future mental and emotional distress, according to proof;

    f.    Punitive or exemplary damages according to proof;

    g.    Restitution, disgorgement of profits, and other equitable relief;

    h.    Injunctive relief;

43

Case ID: 160401686

i.   Attorney's fees;

j.   Costs of suit incurred herein;

k.   Pre-judgment interest as provided by law; and

l.   Such other and further relief as the Court may deem just and proper.

## III.  DEMAND FOR JURY TRIAL

242.   Plaintiff hereby demands a jury trial on all claims so triable in this action.


Date: <u>April 15, 2016</u>

                                    James J. McHugh, Jr.
Joshua M. Mankoff
**LOPEZ MCHUGH, LLP**
1123 Admiral Peary Way
Quarters K
Philadelphia, PA 19112
Telephone: (215) 952-6910
Facsimile: (215) 952-6914
*Attorneys for Plaintiff*


                                    */s/ Frank Petosa*
Frank M. Petosa
FL Bar No. 972754
Morgan & Morgan Complex Litigation Group
600 N. Pine Island Road
Suite 400
Plantation, FL 33324
Telephone: (954) 318-0268
Facsimile: (954) 327-3018
*Attorneys for Plaintiff*
*Pro Hac Vice application filed*

44

## VERIFICATION

I, Karen Johnson, hereby verify that the information contained in the foregoing

Complaint is true and correct to the best of my knowledge, information and belief. The attached

Complaint is based upon information which has been furnished to Plaintiff's counsel and

information which has been gathered by counsel in preparation for the prosecution of this

lawsuit. The language contained in the Complaint is that of counsel and not of Plaintiff. I have

read the Complaint and, to the extent that it is based upon information which was given to

counsel, it is true and correct to the best of my knowledge, information, and belief. To the extent

that the contents of the Complaint are that of counsel, I have relied upon counsel in making this

verification.

I make this verification subject 18 Pa. C.S § 4904, and I understand that the above

statements, if false, are subject to the penalties under § 4904, relating to unsworn falsification to

authorities.

Dated: 4/14/2016

KAREN JOHNSON

# EXHIBIT C

PHILADELPHIA COURT OF COMMON PLEAS
## PETITION/MOTION COVER SHEET

| CONTROL NUMBER: |
| --- |
| 16101054 |
| *(RESPONDING PARTIES MUST INCLUDE THIS NUMBER ON ALL FILINGS)* |

| FOR COURT USE ONLY | |
| --- | --- |
| ASSIGNED TO JUDGE: | ANSWER/RESPONSE DATE: 10/31/2016 |

*Do not send Judge courtesy copy of Petition/Motion/Answer/Response. Status may be obtained online at http://courts.phila.gov*

December Term, 2015
*Month*          *Year*

No. _____ 00653 _____

Name of Filing Party:
ARTHUR PORTNOFF-PLF

PORTNOFF VS JANSSEN PHARMACEUTICALS, INC. ETAL

**INDICATE NATURE OF DOCUMENT FILED:**
- ☐ Petition *(Attach Rule to Show Cause)*   ☒ Motion
- ☐ Answer to Petition   ☐ Response to Motion

Has another petition/motion been decided in this case?   ☐ Yes   ☒ No
Is another petition/motion pending?   ☐ Yes   ☒ No

*If the answer to either question is yes, you must identify the judge(s):*
JUDGE JACQUELINE F. ALLEN

| TYPE OF PETITION/MOTION *(see list on reverse side)* | PETITION/MOTION CODE *(see list on reverse side)* |
| --- | --- |
| MISCELLANEOUS MOTION | MTMIS |

ANSWER / RESPONSE FILED TO (Please insert the title of the corresponding petition/motion to which you are responding):

**I. CASE PROGRAM**

DAY FORWARD/MAJOR JURY PROGRAM

Name of Judicial Team Leader: JUDGE JOHN YOUNGE
Applicable Petition/Motion Deadline: N/A
Has deadline been previously extended by the Court: N/A

**II. PARTIES** *(required for proof of service)*
(Name, address and **telephone number** of all counsel of record and unrepresented parties. Attach a stamped addressed envelope for each attorney of record and unrepresented party.)

JOSHUA M MANKOFF
214 FLYNN AVENUE , MOORESTOWN NJ 08057
MITSUBISHI TANABE PHARMA CORP.
3-2-10, DOSHO-MACHI CHUO-KU , OSAKA 541-8505
BRIAN T FEENEY
GREENBERG TRAURIG, LLP 2700 TWO COMMERCE SQ 2001 MARKET ST , PHILADELPHIA PA 19103

**III. OTHER**

By filing this document and signing below, the moving party certifies that this motion, petition, answer or response along with all documents filed, will be served upon all counsel and unrepresented parties as required by rules of Court (see PA. R.C.P. 206.6, Note to 208.2(a), and 440). Furthermore, moving party verifies that the answers made herein are true and correct and understands that sanctions may be imposed for inaccurate or incomplete answers.

_____     October 11, 2016     LAURA A. FELDMAN     _____
*(Attorney Signature/Unrepresented Party)*          *(Date)*          *(Print Name)*          *(Attorney I.D. No.)*

**The Petition, Motion and Answer or Response, if any, will be forwarded to the Court after the Answer/Response Date.
No extension of the Answer/Response Date will be granted even if the parties so stipulate.**

FILED
Civil Administration
31 OCT 2016 02:05 pm
C. FORTE

IN THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
PHILADELPHIA COURT OF COMMON PLEAS
TRIAL DIVISION – DIVISION

| | | |
|---|---|---|
| ARTHUR PORTNOFF | § | COURT OF COMMON PLEAS |
| | § | PHILADELPHIA COUNTY |
| vs. | § | |
| | § | |
| JANSSEN PHARMACEUTICALS | § | DECEMBER TERM, 2015 |
| INC., JANSSEN RESEACH AND | § | |
| DEVELOPMENT, LLC, JOHNSON& | § | NO:  00653 |
| JOHNSON CO., MITSUBISHI | § | |
| TANABE PHARMA CORP. | § | |

| | | |
|---|---|---|
| IN RE: INVOKANA® | § | |
| a/k/a Canagliflozin | § | |
| | § | |
| | § | |
| | § | TERM, 2016 |
| | § | |
| *This Document Relates to All Actions* | § | |
| | § | No: |
| | § | |

**PLAINTIFFS' PETITION TO CONSOLIDATE INVOKANA®
PRODUCTS LIABILITY CASES CURRENTLY PENDING IN THE
PHILADELPHIA COURT OF COMMON PLEAS AND FOR
MASS TORT DESIGNATION**

 

LEVIN, FISHBEIN, SEDRAN & BERMAN
*Counsellors at Law and Proctors in Admiralty*

October 11, 2016

**VIA FAX 215 686-7049**

The Honorable Jacqueline F. Allen
Administrative Judge
Court of Common Pleas, Trial Division
City Hall, Room 516
Philadelphia, PA, 19107

Re:    *In Re: Invokana® Products Liability Litigation (Proposed)*

---

**Plaintiffs' Petition to Consolidate Invokana Products
Liability Cases Currently Pending in the
Philadelphia Court of Common Pleas and for Mass
Tort Designation**

---

Dear Judge Allen:

Our firms currently represent Plaintiffs that have filed suit against Defendants, Janssen Research & Development LLC, Janssen Pharmaceuticals, Inc., Johnson & Johnson and Mitsubishi Tanabe Pharma Corp. and its affiliates (collectively "Defendants") that manufactured and marketed the prescription drug Invokana. There are approximately 94 cases pending in this Court as set forth on Exhibit 1. Our firms anticipate that there will at least be a doubling of that number in the near future

We have spoken with many of the other Plaintiffs' counsel in the Related Cases, including Ellen Relkin from Weitz & Luxenberg, Joshua Mankoff from Lopez McHugh and Frank Petosa from Morgan & Morgan who have consented to requesting that the Related Cases be designated *In Re Invokana® Products Liability Litigation* and assigned to a Mass Tort program.

---

Case ID: 151200653
Control No : 16101054

## II.    FACTUAL BACKGROUND

On March 29, 2013 Invokana (canagliflozin) was approved by the United States Food and Drug Administration ("FDA") for sale in the United States for treatment of Type-2 diabetes.

Invokana (canaglflozin) was introduced to the United States market on March 29, 2013 and is part of a new class of drugs known as sodium-glucose co-transporter2 (SGLT2) inhibitors. Invokana works by blocking the reabsorption of glucose by the kidney, increasing glucose excretion, and lowering blood glucose levels in diabetics who have elevated blood glucose levels.

SGLT2 inhibitors, including Invokana, inhibit renal glucose reabsorption through the SGLT2 receptor in the proximal renal tubules, causing glucose to be excreted through the urinary tract. This puts additional stress on the kidneys in patients already at risk for kidney disease. SGLT2 inhibitors, including Invokana are designed to target primarily the SGLT2 receptor, but have varying selectivity for this receptor, and block other sodium-glucose co-transporters receptors, including SGLT1. The SGLT2 and SGLT1 receptors are located throughout the body, including in the kidney, intestines, and brain. Invokana has the highest selectivity for the SGLT1 receptor among SGLT2 inhibitors currently marketed in the United States. SGLT2 inhibitors, including Invokana, are currently approved only for improvement of glycemic control in adults with Type-2 diabetes.

Defendant, Tanabe, in collaboration with the other Defendants, designed and developed the diabetes drug, Invokana. Defendant, Janssen, a wholly owned subsidary of J&J acquired the marketing rights to Invokana in North America, and marketed, advertised, distributed, and sold Invokana in the Unites States including in Pennsylvania and Philadelphia. In May, 2012, Janssen R&D submitted a New Drug Application to the FDA for the approval to market Invokana in the United States. In March, 2013, FDA approved Invokana as an adjunct to diet and exercise for the improvement of glycemic control in adults with Type-2 diabetes.

As part of its marketing approval of Invokana, the FDA required the Defendants to conduct five post-marketing studies: a cardiovascular outcomes trial; and enhanced pharmacovigilance program to monitor for malignancies, serious cases of pancreatitis, severe hypersensitivity reactions, photosensitivity reactions, liver abnormalities, and adverse pregnancy outcomes: a bone safety study, and to pediatric studies under the Pediatric Research Equity Act (PREA), including a pharmacokinetic and pharmacodynamics study and a safety and efficacy study.

Since Invokana's release, the FDA has received a significant number of reports of severe kidney damage among users of the drug. An analysis of the FDA adverse event database shows that patients taking Invokana are several times more likely to report severe kidney damage than those taking non-SGLT2 diabetes drugs to treat diabetes. Despite Defendants' knowledge of the increased risk of severe injury among Invokana users, they did not warn patients but instead

Case ID: 151200653
Control No · 16101054

continued to defend Invokana, mislead physicians and the public, and minimize unfavorable findings.

Specifically, Defendants knew or should have known of the risks of diabetic ketoacidosis and kidney failure based on the data available to them through studies that could have been generated by them, including, but not limited to animal studies, mechanisms of action, pharmacodynamics, pharmacokinetics, pre-clinical studies, clinical studies, animal models, genetic models, analogous compounds, analogous conditions, adverse event reports, case reports, post-marketing reports, and regulatory authority investigation, including but not limited to the following:

a.   Invokana selectivity for the SGLT1 receptor:

b.   Animal studies demonstrating increased ketones when given Invokana;

c.   Studies of phlorizin indicating a propensity to cause ketoacidosis;

d.   Reports involving people with familial glycosuria, indicating a propensity to develop ketoacidosis;

e.   Clinical studies demonstrating increases in glucagon in people taking Invokana;

f.   Clinical studies, adverse event reports, and case reports demonstrating increased ketones in people taking Invokana;

g.   Clinical studies, adverse event reports, and case reports demonstrating dehydration and volume depletion in people taking Invokana;

h.   Clinical studies, adverse event reports, and case reports demonstrating vomiting in people taking Invokana;

i.   Clinical studies, adverse event reports, and case reports demonstrating re-challenge responses in increasing ketones and diabetic ketoacidosis in people taking Invokana; and

j.   Adverse event report analysis demonstrating an increased rate of reports for ketoacidosis in people taking Invokana compared to other glucose-lowering medications.

Diabetic ketoacidosis may lead to complications such as cerebral edema, pulmonary edema, cerebrovascular accident, myocardial infarction, nonspecific myocardial injury, severe dehydration, and coma. Invokana induced diabetic ketoacidosis may lead to delayed treatment because in many cases Invokana will keep blood sugar below 250 mg/dl, a threshold often used when diagnosing diabetic ketoacidosis. This may result in increased progression of the condition and increased injury to the patient. Defendants were aware that the mechanisms of action for

Case ID: 151200653
Control No : 16101054

Invokana places extraordinary strain on the kidneys and renal system. Despite their knowledge of data indicating that Invokana use is causally related to the development of diabetic ketoacidosis and kidney failure, Defendants did not adequately and sufficiently warn the medical community or consumers of the severity such risks. To the contrary, Defendants conducted sales and marketing campaigns including in Pennsylvania to promote the sale of Invokana and willfully deceived consumers, health care professionals, the medical community, and the general public as to the health risks and consequences of the use of the Invokana.

On May 15, 2015, the FDA announced that SGLT2 inhibitors may lead to diabetic ketoacidosis. On September 10, 2015, the FDA announced that Invokana causes premature bone loss and fractures. On October 16, 2015, Health Canada, the Canadian drug regulatory authority, announced that Invokana can cause acute kidney injury. On December 4, 2015, the FDA announced a label change for SGLT2 inhibitors, requiring that the label of SGLT2 inhibitors include a warning of ketoacidosis, the risk of too much acid in the blood while taking SGLT2 inhibitors. The FDA also required warnings about the risk of serious urinary tract infections including Urosepsis and Pyelonephritis (kidney infection).

Prior to the FDA's December 4, 2015, safety announcement, Invokana's label failed to adequately warn consumers of these serious risk of developing diabetic ketoacidosis. The Invokana label currently does not warn of the serious risks of developing bone fractures and kidney injury. Despite the FDA's announcements, Defendants continue to engage in aggressive direct-to-consumer and physician marketing and advertising campaigns for Invokana nationally and in Pennsylvania. In addition, Defendants failed to ensure that full and correct safety labeling and warnings were used in pharmacy sheets that accompanied Invokana to the purchaser.

All of the Plaintiffs and their prescribing and treating physicians relied on claims made by Defendants that Invokana has been clinically shown to improve glycemic control and was generally safe and effective. These claims reached Plaintiffs' prescribing and treating physicians directly, through print and television advertising, articles and study reports funded and promoted by Defendants, and indirectly through other healthcare providers and others who have been exposed to Defendants' claims through their aggressive, comprehensive and sophisticated marketing campaigns.

In June 2016, the FDA released a safety announcement concerning the diabetes medicines canagliflozin and dapagliflozin existing warning about the risk of acute kidney injury for the Type-2 diabetes medicines canagliflozin (Invokana, Invokamet) and dapagliflozin (Farxiga, Xigduo XR). Based on recent reports, the FDA has revised the warnings in the drug labels to include information about acute kidney injury and added recommendations to minimize this risk. The FDA warned that acute kidney injury "is a serious condition in which the kidneys suddenly stop working, causing dangerous levels of wastes to build up in the body." The FDA further warned that "[h]ealth care professionals should consider factors that may predispose patients to acute kidney injury prior to starting them on canagliflozin or dapagliflozin."[1]

---

[1]    See http://www.fda.gov/Drugs/DrugSafety/ucm505860.htm (last visited Sept. 22, 2016).

In the June label change, the FDA requested new precautions under two of the six safety labeling sections for Invokana.5 Among those changes was an added section under "WARNINGS AND PRECAUTIONS" for "Ketoacidosis," including "Reports of ketoacidosis, a serious life-threatening condition requiring urgent hospitalization have been identified in postmarketing surveillance in patients with type 1 and type 2 diabetes mellitus receiving sodium glucose co-transporter-2 (SGLT2) inhibitors, including INVOKANA."[2] The same revised warnings included the fact that "in many of the postmarketing reports ... the presence of ketoacidosis was not immediately recognized and institution of treatment was delayed...." Doctors are now instructed that [b]efore initiating INVOKANA, they should "consider factors in the patient history that may predispose to ketoacidosis."

Further warnings were added to the label in August 2016. The new warnings stated that fatal cases of ketoacidosis have been reported in patients taking Invokana. The FDA advised doctors to inform patients that ketoacidosis is a serious life-threatening condition.

Invokana is one of Defendants' top selling drugs, with annual sales exceeding $1 billion dollars.

## III.  THE CREATION OF A MASS TORT PROGRAM WILL ELIMINATE DUPLICATIVE DISCOVERY AND AVOID INCONSISTENT PRETRIAL RULINGS, PROMOTE EFFICIENT RESOLUTION OF RELATED CLAIMS, AND CONSERVE THE RESOURCES OF THE JUDICIARY, THE PARTIES, AND THEIR COUNSEL

The legal theories and facts asserted in all the Related Actions and those that will be filed in the future are virtually identical and arise from the identical conduct of Defendants. The common allegations in the Related Actions are that Defendants' product causes serious, potential fatal injuries, including diabetic ketoacidosis and its sequale, kidney failure and its sequale and serious cardiovascular problems. The Related Actions involve common claims such as negligence, strict liability, breach of warranty, negligent misrepresentation and fraud, among others. The common issues in those claims include: (1) whether Invokana generally caused certain injuries, (2) whether Defendants knew of the risks, or should have known of the risks; (3) if so, whether Defendants failed to disclose the risks to the medical community and/or consumers; and (4) whether Invokana was marketed in a way that misrepresented the benefits and risks of Invokana® to the medical community and consumers. The Plaintiffs in the Related Actions seek damages for personal injury and/or economic damages from their Invokana ingestion.

In light of the numerous common issues and questions of fact involving cases, determination of these and other common issues in a single district will benefit the parties and witnesses, while serving to promote the efficient prosecution and resolution of these Related Actions. In addition to significant financial savings, consolidation of these cases will promote the

---

[2]  *See*  FDA  Invokana  warning  changes  over  Time,  *available  at:* http://www.fda.gov/Safety/MedWatch/SafetyInformation/ucm400577.htm (emphasis added) (last visited Sept. 22 2016).

convenience of the parties and efficiency during pretrial proceedings, duplicative discovery will be eliminated, and there will be no risk of inconsistent judicial rulings. All of the actions proposed for transfer and consolidation allege substantially similar, and in some cases identical, causes of action and are based upon the same or substantially similar underlying facts, namely, that use of Invokana® has caused the Plaintiffs to suffer serious and grave injuries.

There are currently 94 cases pending in this Court as set forth on Exhibit 1. Our firms anticipate that there will at least be a doubling of that number in the near future. Additionally, there may be other Invokana cases filed that we are not aware of despite our efforts to identify them all. We have also respectfully submitted a proposed CMO-1 as Exhibit 2.

## IV.    CONCLUSION

In sum, the creation of a mass tort program is appropriate here because the Related Actions involve common questions of fact and law and consolidation for pre-trial and trial will promote judicial economy and the just and efficient resolution of these actions. An Invokana Mass Tort program will eliminate duplication, avoid inconsistent rulings and conserve the resources of the parties, counsel and the judiciary.

Thank you for your consideration of this request.

Respectfully submitted,

Laura A. Feldman
Michael M. Weinkowitz
Daniel N. Gallucci
Ellen Relkin
Joshua Mankoff

cc:    The Honorable Arnold New via E-mail
The Honorable John Milton Younge via fax
The Honorable Denis P. Cohen via fax
Stanley Thompson, Esquire via E-mail
Brian T. Feeney, Esquire via E-mail
Gregory T. Sturges, Esquire via E-mail
All counsel of record on attached Exhibit "1" via E-mail

Case ID: 151200653
Control No : 16101054

# EXHIBIT 1

Case ID: 151200653

Control No.: 16101054

# EXHIBIT 1

|   | Case Name | Court Term and Number | Defendants | Plaintiffs' Counsel |
|---|---|---|---|---|
| 1 | Wear, Melissa and Adam | 151202121 | Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Johnson & Johnson, Janssen Ortho LLC, Mitsubishi Tanabe Pharma Development America, Inc. | Anapol Weiss |
| 2 | Portnoff, Arthur | 151200653 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Mitsubishi Tanable Pharma Corp. | Lopez, McHugh, |
| 3 | Cherry, Deirdre, Administrator of the Estate of David Cherry | 151202946 | Janssen Research & Development LLC, Janssen Ortho LLC, Janssen Pharmaceuticals, Inc., Johnson & Johnson, Mitsubishi Tanabe Pharma Corp, Mitsubishi Chemical Holdings Corporation, | Anapol Weiss |
| 4 | Jeffries, Joyce | 160200006 | Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Johnson & Johnson, Janssen Ortho LLC, Mitsubishi Tanabe Pharma Development America, Inc., Mitsubishi Tanabe Pharma Holdings America | Lopez, McHugh |
| 5 | Ritenour, Ralph P. | 160203760 | Janssen Pharmaceuticals, Inc., Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Corp., Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabbe Pharma Development America, Inc., McKesson | Lopez McHugh |

| | | | Corporation | |
|---|---|---|---|---|
| 6 | Furlow, William | 160301615 | Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, Johnson & Johnson, Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Development America, Inc. | Weitz & Luxenberg |
| 7 | Harper, Jamel | 160301617 | Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, Johnson & Johnson, Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Development America, Inc. | Weitz & Luxenberg |
| 8 | Leigh, Ray | 160301649 | Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC, Johnson & Johnson | Levensten Law Firm |
| 9 | Barrick, Joan | 160301614 | Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, Johnson & Johnson, Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Development America, Inc. | Weitz & Luxenberg |
| 10 | Fortado, Mary | 160301651 | Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC, Johnson & Johnson | Levensten Law Firm |
| 11 | Huddleston, Lillie | 160301050 | Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, Johnson & Johnson, Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Development America, Inc. | Weitz & Luxenburg |
| 12 | Landes, Matthew | 160300269 | Janssen Pharmaceuticals, Inc., Janssen Ortho LLC, Johnson & Johnson, Mitsubishi Tanabe Pharma Corp., Mitsubishi Chemical Holdings Corporation | Anapol Weiss |
| 13 | Johnson, Karen | 160401686 | Janssen Pharmaceuticals, Inc, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., | Lopez McHugh |

| | | | | |
|---|---|---|---|---|
| | | | Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | |
| 14 | Colbaugh, Kristi | 160402173 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories, USA Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 15 | Jordan, Cody | 160402174 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories, USA Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 16 | Davis, Willetta | 160402175 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories, USA Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 17 | McCumbers, Susan | 160501242 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe | Lopez McHugh |

| | | | Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories, USA Inc., Mitsubishi Tanabe Pharma | |
|---|---|---|---|---|
| 18 | Hayhurst, David | 160501231 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories, USA Inc., | Lopez McHugh |
| 19 | Carlin, Martin | 160501230 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories, USA Inc., Mitsubishi Tanabe Pharma | Lopez McHugh |
| 20 | Harrold, Chestopher | 160501225 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories, USA Inc., Mitsubishi Tanabe Pharma | Lopez McHugh |
| 21 | Allen, Craigory | 160501233 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, | Lopez McHugh |

|   |   |   | LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories, USA Inc., Mitsubishi Tanabe Pharma |   |
|---|---|---|---|---|
| 22 | Sanders, Ludie | 160501232 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories, USA Inc., Mitsubishi Tanabe Pharma | Lopez McHugh |
| 23 | Maggerd, James | 160501227 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories, USA Inc., Mitsubishi Tanabe Pharma | Lopez McHugh |
| 24 | Gay, Sarah | 160501225 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories, USA Inc., Mitsubishi Tanabe Pharma | Lopez McHugh |
| 25 | Bassett, Ann | 160501487 | Janssen Research & Development LLC, Janssen | Simmons Hanly |

| | | | Ortho LCC,  Janssen Pharmaceuticals, Inc., Johnson & Johnson, Mitsubishi Chemical Holdings Corp., Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc. | Conroy |
|----|-------------------|-----------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------------------------------|
| 26 | Teague, Nancy | 160501646 | Janssen Research & Development LLC, Janssen Ortho LCC,  Janssen Pharmaceuticals, Inc., Johnson & Johnson, Mitsubishi Chemical Holdings Corp., Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc | Simmons Hanly Conroy |
| 27 | Hicks, Kevin | 160501079 | Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Johnson & Johnson, Janssen Ortho LLC, Mitsubishi Tanabe Pharma Development America, Inc., | Weitz & Luxenberg |
| 28 | Mayfield, David | 160501282 | Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Johnson & Johnson, Janssen Ortho LLC, Mitsubishi Tanabe Pharma Development America, Inc. | McNichol, Bryne & Matlawski |
| 29 | Steiner, Anicia | 160100958 | Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Johnson & Johnson | McNichol, Bryne & Matlawski |
| 30 | Harold, Chistopher | 160501242 | Astrazeneca AB, Janssen Research & Development LLC, Janssen Pharmaceuticals, Inc., Janssen Ortho LLC, Johnson & Johnson, Bristol-Myers Squibb Company, Astrazeneca LP, Astrazeneca Pharmaceuticals LP, | Levensten Law Firm |

| 31 | Seay, Sally | 160502030 | Astrazeneca AB, Janssen Research & Development LLC, Janssen Pharmaceuticals, Inc., Janssen Ortho LLC, Johnson & Johnson, Bristol-Myers Squibb Company, Astrazeneca LP, Astrazeneca Pharmaceuticals LP, | Levensten Law Firm |
| --- | --- | --- | --- | --- |
| 32 | Demers, Richard | 160503086 | Mitsubishi Tanabe Pharma, Corp., Janssen Pharmaceuticals, Inc., Janssen Research and Development, LL, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Tanabe Research Laboratories USA, Inc., | Lopez McHugh |
| 33 | Drzycimski, Jeff | 160503080 | Mitsubishi Tanabe Pharma Corp., Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings, America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc. | Lopez McHugh |
| 34 | Mandel, Darren | 160503082 | Mitsubishi Tanabe Pharma Corp., Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson, Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc. | Lopez McHugh |
| 35 | Hess, Mary | 160503153 | Janssen Research & Development, LLC, Janssen Ortho, LLC, Janssen Pharmaceuticals, Inc., Johnson | Simmons Hanly Conroy |

| | | | | |
|---|---|---|---|---|
| | | | & Johnson, Mitsubishi Tanabe Pharma Corp., Mitsubishi Chemical Holdings Corporation, Mitsubishi Tanabe Pharma Holdings, America, Inc., Tanabe Research Laboratories USA, Inc. | |
| 36 | Guthrie, Laurie | 160502837 | Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Johnson & Johnson, Janssen Ortho LLC, Mitsubishi Tanabe Pharma Development America, Inc. | Levin, Fishbein, Sedran & Berman |
| 37 | Clarkson, Robert | 160503703 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings, America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 38 | McKinney, Connie | 160503704 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 39 | Suddreth, Amy | 160503540 | Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC, Johnson & Johnson | Levensten Law Firm |
| 40 | Stone, Francis | 160403438 | Mitsubishi Tanabe Pharma Corp., Janssen | Lopez McHugh |

| | | | Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc. Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., | |
|---|---|---|---|---|
| 41 | Maness, Donna | 160600829 | Janssen Pharmaceuticals, Inc., Janssen Research and Devlopment, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 42 | Amburn, Brandon | 160503084 | Janssen Research and Development, LLC, Janssen Pharmaceuticals, Inc., Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 43 | Powe, Tomekie T. | 160601148 | Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Development America, Inc., Mitsubishi Tanabe Pharma Corp., Johnson & Johnson | Robins, Kaplan |
| 44 | Russell, Virginia | 160503520 | Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, Johnson & Johnson, Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Development America, Inc. | Weitz & Lexenberg |

Case ID: 151200653

Control No : 16101054

| 45 | Petersen, Kurt | 160602700 | Janssen Pharmaceuticals, Inc., Janssen Research and Development LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
|---|---|---|---|---|
| 46 | Sherum, Star | 160602881 | Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho, LLC, Johnson & Johnson | Levensten Law Firm |
| 47 | Deaton, Bobbie | 160603581 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsuibishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories, USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 48 | Moyers, Thomas Lee | 160603582 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 49 | Schielka, Kenneth | 160603583 | Mitsubishi Tanabe Pharma Corp, Janssen Research and Development, LLC, Janssen Pharmaceuticals, Inc., Johnson & Johnson & co., Janssen | Lopez McHugh |

| | | | Ortho, LLC, Mitsubishi Tanabe Pharma Development America, Inc., Mitsubishi Tanbe Pharma Holdings America, Inc., Tanabe Research Laboratories USA, Inc. | |
|---|---|---|---|---|
| 50 | Miles, Hayley | 160601731 | Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, Mitsubishi Tanabe Pharma Corp., Johnson & Johnson Co. | Feldman and Pinto |
| 51 | Mobley, Michael | 160403460 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanable Pharma Development America, Inc., Tanabe Research Laboratories USA, nc., Mitsubishi Tanabe Pharma Corp. | Ross Feller Casey |
| 52 | Allen, Tom | 160700676 | Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Johnson & Johnson, Janssen Ortho LLC, Mitsubishi Tanabe Pharma Development America, Inc., | McNichol, Bryne & Matlawski |
| 53 | Goins, Robert | 160402935 | Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories, USA, Inc., Mitsubishi Tanabe Pharma Corp. | Ross Feller Casey |
| 54 | Carr, Samuel | 160701064 | Janssen Pharmaceuticals, Inc., | Levensten Law Firm |
| 55 | Huckabee, Carol | 160701065 | Janssen Pharmaceuticals, Inc., | Levensten |

| | | | | Law Firm |
|---|---|---|---|---|
| 56 | Thornton, Norma | 160701066 | Janssen Pharmaceuticals, Inc. | Levensten Law Firm |
| 57 | Marlow, Lena | 160501544 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Ross Feller Casey |
| 58 | Rios, Tina | 160503334 | Janssen Pharmaceuticals, Inc., Janssen Research and Development LLC, Johnson & Johnson Co, Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Ross Feller Casey |
| 59 | Williams, Stacey | 160503513 | Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, Johnson & Johnson, Janssen Ortho LLC, Mitsubishi Tanabe Pharma Development America, Inc., | Weitz & Luxenberg |
| 60 | Walker, Franklin | 160403253 | Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, Johnson & Johnson, Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Development America, Inc., | Levin Fishbein Sedran & Berman |
| 61 | Plott, Christie | 160702831 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Development America, Inc., Mitsubishi | Lopez McHugh |

| | | | Tanabe Pharma Holdings America, Inc., Tanabe Research Laboratories USA, Inc. | |
|---|---|---|---|---|
| 62 | Terry, Clinton | 160800024 | Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, Johnson & Johnson, Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Development America, Inc., | Weitz & Luxenberg |
| 63 | Clark, Richard | 160800097 | Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, Johnson & Johnson, Janssen Ortho LLC, Mitsubishi Tanabe Pharma Development America Inc. | Weitz & Luxenberg |
| 64 | Simpson, Isaac Jr. | 160703044 | Janssen Pharmaceuticals, Inc., | Levensten Law Firm |
| 65 | Perry, Donnie | 160703042 | Janssen Pharmaceuticals, Inc. | Levensten Law Firm |
| 66 | Taplin, Suzanne | 160800095 | Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC,  Johnson & Johnson, Janssen Ortho LLC, Mitsubishi Tanabe Pharma Development America, Inc., | Weitz & Luxenberg |
| 67 | Bruner, Darnella | 160800737 | Mitsubishi Tanabe Pharma Corp., Janssen Pharmaceuticals, Inc., Janssen Research and Development, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc. | Lopez McHugh, |
| 68 | Garcia, Gisella | 160802384 | Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, Johnson & Johnson, Mitsubishi Tanabe Pharma Development America, Inc., Janssen Ortho LLC | Levin Fishbeing Sedran & Berman |

Case ID: 151200653

Control No : 16101054

| 69 | Frazier, Miranda | 160801637 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh, |
| 70 | Mahoney, Jacqueline | 160802629 | Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, Johnson & Johnson, Janssen Ortho LLC, Mitsubishi Tanabe Pharma Development America, Inc., | Weitz & Luxenberg |
| 71 | Cooper, William | 160802614 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 72 | Board, Kenneth | 160802617 | Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 73 | Marciano, Vera | 160802621 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe | Lopez McHugh |

| | | | Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | |
|---|---|---|---|---|
| 74 | Carrington, Helen | 160802618 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC., Johnson & Johnson, Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 75 | Campbell, Melinda | 160802616 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 76 | Covington, Robert | 160802619 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 77 | Jett, Michael | 160802615 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson | Lopez McHugh |

| | | | & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | |
|---|---|---|---|---|
| 78 | James, Cynthia | 160802620 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 79 | Lambert, Carlotta | 160802613 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 80 | Oberschmidt, David | 160802622 | Janssen Research and Development, LLC, Johnson & Johnson CO., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories, USA, Inc., Mitsubishi Tanabe Pharama Corp. | Lopez McHugh |
| 81 | Dincans, Alan Bennett | 160802895 | Janssen Pharmaceuticals, Inc., | Levensten Law Firm |
| 82 | Locke, Roy | 160802582 | Janssen Pharmaceuticals, Inc. | Levensten |

| | | | | Law Firm |
|---|---|---|---|---|
| 83 | Suiter, Judith | 160802784 | Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, Mitsubishi Tanabe Pharma Corp., Johnson & Johnson Co. | Feldman and Pinto |
| 84 | Choate, Terry | 160804135 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 85 | Jimenez-Medina, Fermin | 160804125 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, Johnson & Johnson Co., Janssen Ortho, LLC,  Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 86 | Jones, Annette | 160804136 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development America, Inc., Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp. | Lopez McHugh |
| 87 | Wright, Theodore | 160804137 | Janssen Pharmaceuticals, Inc., Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma | Lopez McHugh |

Case ID: 151200653

Control No : 16101054

| | | | Development America, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Janssen Ortho, LLC, Tanabe Research Laboratories USA, Inc., Mitsubishi Tanabe Pharma Corp., | |
|---|---|---|---|---|
| 88 | Cresitello, Michelle | 160902907 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Mitsubishi Tanabe Pharma Corp. | Feldman and Pinto |
| 89 | Jones, Napoleon | 160902910 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Mitsubishi Tanabe Pharma Corp. | Feldman and Pinto |
| 90 | Lewis, Chris | 160902906 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Mitsubishi Tanabe Pharma Corp. | Feldman and Pinto |
| 91 | Nota, Kulsoom | 160902911 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Mitsubishi Tanabe Pharma Corp. | Feldman and Pinto |
| 92 | Oster, Michael | 160902975 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Mitsubishi Tanabe Pharma Corp. | Feldman and Pinto |
| 93 | Palacio, Judith | 160902969 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Mitsubishi Tanabe Pharma Corp. | Feldman and Pinto |
| 94 | Wagstaff, Judith | 160902909 | Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC, Johnson & Johnson Co., Mitsubishi Tanabe Pharma Corp. | Feldman and Pinto |

# EXHIBIT 2

Case ID: 151200653
Control No : 16101054

IN THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
PHILADELPHIA COURT OF COMMON PLEAS
TRIAL DIVISION - DIVISION

| | | |
|---|---|---|
| IN RE: INVOKANA® | § | |
| a/k/a Canagliflozin | § | |
| | § | |
| | § | |
| | § | TERM, 2016 |
| | § | |
| *This Document Relates to All Actions* | § | |
| | § | No: |
| | § | |

## CASE MANAGEMENT ORDER NO: 1

By Order dated _____, the above-referenced Mass Tort Program was established. In order to secure the just, speedy and inexpensive determination of each Invokana case not pending or hereafter filed in the Court of Common Pleas, Philadelphia County, Pennsylvania and, to the extent reasonable, to eliminate duplication of effort, prevent unnecessary paperwork and promote judicial economy, the following Case Management Order No. 1 is entered this _____ day of _____, 2016.

This Order shall govern each Invokana case now pending or hereafter filed in the Court of Common Pleas, Philadelphia County, Pennsylvania. The coordinated procedures set forth in this Order are without prejudice to any party's right to contest further coordination or consolidation of these actions.

I.    **INVOKANA MASTER DOCKET**

1.    A master docket ( _____ ) has been established as a depository for filing of pleadings, motions, orders and other documents common to Invokana Coordinated Proceedings. Once a pleading, motion, order, or other document is filed on this docket and copies are provided to all other interested counsel involved in the Invokana

2

Coordinated Proceedings, the pleading, motion, order, or other document may be incorporated by reference, either orally before the Court, or within another properly filed pleading, motion, order, or other document.

## II.   TEMPORARY STAY ON RESPONSIBLE PLEADING OBLIGATIONS, ON FILING  DISPOSTIVE MOTIONS AND DISCOVERY

2.   All responsive pleading obligations are stayed until further order of the Court.  All parties in these cases ae directed to refrain from filing any potentially, dispositive motions (i.e., Motions for Summary Judgment, Venue, Motions or Judgment on the Pleadings) temporarily until further Order.

3.   All discovery is stayed pending further order of the Court.

## III.   APPOINTMENT OF LIASON COUNSEL

4.   The following attorneys are hereby appointed as liaison counsel:

(a)   *Plaintiffs' Liaison Counsel:*
Laura A. Feldman
Rosemary Pinto
Feldman and Pinto
6706 Springbank Street
Philadelphia, PA  19119
(215) 546-2604
Email:  lfeldman@feldmanpinto.com
Email:  rpinto@feldmanpinto.com

Michael M. Weinkowitz
Levin, Fishbein, Sedran & Berman
510 Walnut Street – Suite 500
Philadelphia, PA  19106
(215) 592-1500
Email: MWeinkowitz@lfsblaw.com

Daniel N. Gallucci
NastLaw, LLC
1101 Market Street, Suite 2801
Philadelphia, PA  19107
(215) 923-9300
Email:  dgallucci@nastlaw.com

Case ID: 151200653
Control No : 16101054

    b)    *Defendants' Liaison Counsel*

Brian T. Feeney
Greenberg Traurig
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
(215) 988-7812
Email: feeneyb@gtlaw.com

Gregory T. Sturges
Greenberg Traurig
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
(215) 988-7812
Email: sturgesg@gtlaw.com

5.    **Privileges Preserved** – No communication among Plaintiffs' counsel or among Defendants' counsel shall be taken as a waiver of any privilege or protection to which they would otherwise be entitled.

## IV.    SERVICE OF PAPERS AND PLEADINGS ON LIASION COUNSEL

6.    Service other than original process in the Invokana Coordinated Actions shall be made by email to counsel of record as proved in the pleadings or fact sheets, and first class mail except where rule of Court specifies some other form of service. Service of original process such as writs of summons or complaints shall be made pursuant to applicable rules of court, statutes and treaties, unless otherwise agreed to by the Parties.

7.    All Master Discovery Requests and Responses and Master Motions and Responses served under the "Invokana" master caption shall be served on opposing liaison counsel.

Case ID: 151200653
Control No : 16101054

8.      Service of Master Discovery responses on liaison counsel shall be deemed as service on all counsel, and liaison counsel shall be responsible for disseminating those materials to all co-counsel.  The parties will make a single service of these documents in paper copy form to opposing liaison counsel at their Philadelphia office, and will also serve these documents simultaneously to opposing liaison counsel electronically in PDF or similar format.  If a document is too large to be served via email, counsel shall so inform the party to be served and then serve the document by hand-delivery or overnight mail.  Other Plaintiffs counsel who are counsel of records for cases pending in these Invokana cases who would like copies of these documents are bound by the terms of any *Protective Order* to be entered by this Court and must make arrangements through Plaintiffs' liaison counsel if they wish to obtain copies of these documents.  Nothing in this paragraph shall eliminate the need to make service of original process pursuant to applicable rules of court, statutes and treaties or to waiver any Defendants'' clams as to the propriety of service.

9.      All documents served on liaison counsel shall be served at counsel's Philadelphia office in accordance with the Pennsylvania Rules of Civil Procedure and the Mass Tort Program and Complex Litigation Center rules.

10.      All case-specific documents shall be served on proper individual counsel in a manner consisted with the Pennsylvania Rules of Civil Procedure and the Mass Tort Program and Complex Litigation Center rules.

## V.    **FURTHER ORDERS**

11.      Liaison counsel shall meet and confer and submit within 30 days of the Order a proposed CMO-2 addressing Master and Short-form pleadings and practice.

12.      Liaison counsel shall meet and confer concerning:

Case ID: 151200653
Control No : 16101054

(a)    Plaintiffs'' and Defendants' Fact Sheets;

(b)    Protective Order;

(c)    Preservation Order;

(d)    ESI-Format of Production Order; and

(e)    Generic and case specific discovery.

BY THE COURT:

_____

                                    J.

6

## CERTIFICATE OF SERVICE

I, Laura A. Feldman, Esquire, hereby certify that I caused a true and correct copy of the foregoing Plaintiffs' Petition to Consolidate Invokana® Products Liability Cases Currently Pending the Philadelphia Court of Common Pleas and for Mass Tort Designation to be served this 11th day of October, 2016, upon all counsel of record via the Prothonotary using Electronic Case filing and email

  /s/ Laura A. Feldman
Laura A. Feldman